326 So.2d 820 (1976)
STATE of Louisiana
v.
Charles R. MADUELL.
No. 56783.
Supreme Court of Louisiana.
January 19, 1976.
Rehearing Denied February 20, 1976.
*823 Bernard E. Fulghum, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
This prosecution was instituted by a bill of information filed by the District Attorney of Orleans Parish on January 6, 1975. The information charges that on December 7, 1974 Charles Maduell robbed Edward Skinner of property having a value of $10. La.R.S. 14:64. After trial by jury, Maduell was found guilty and sentenced to serve fifty years at hard labor in the custody of the Department of Corrections. Thereafter, on February 27, 1975 Maduell was charged as a triple offender under the habitual offender statute. La.R.S. 15:529.1. A hearing a was held, Maduell was found guilty, the sentence imposed on the armed robbery charge was vacated, and he was sentenced to serve 100 years at hard labor in the custody of the Department of Corrections.

Assignment No. 1
Prior to trial defendant filed a motion to recuse the trial judge alleging that he was biased, prejudiced and personally interested in the cause. The motion cites as reason therefor that the judge had, prior to his elevation to the bench, while serving as Assistant District Attorney, prosecuted defendant in another criminal charge. The matter was referred to another judge for determination. After a hearing, the motion was denied.
No evidence is referred to in connection with this hearing and, insofar as can be ascertained, the motion and minute entries reflecting the above facts are the only record available for consideration of this issue.
Defense counsel concedes in brief that the Court's decision in State v. Laborde, 214 La. 644, 38 So.2d 371 (1949), decides an almost identical issue. There the judge was sought to be recused because, as district attorney in the past, he had prosecuted the defendant on several occasions for infractions of criminal laws. The motion to recuse was denied by the Laborde Court. The opinion quotes from State v. Doucet, 199 La. 276, 5 So.2d 894 (1942):
"The jurisprudence of this State is well-settled that if the allegations of the petition for the recusation of a judge are mere general statements of conclusions that the judge is prejudiced and biased against or hostile to the defendant because of personal or political reasons, or that if the petition does state facts which, if proved, would not constitute a legal ground for recusation, the judge who is sought to be recused may himself overrule the motion and need not refer it to another judge for trial." Citing numerous authorities.
Defendant urges, however, that the Laborde case was decided under the Code of Criminal Procedure in effect in 1949 whereby, insofar as pertinent here, a judge could be recused only if he was "interested *824 in the cause." La.Code Crim.Proc. art. 303 (1928). The revision of the Code in 1966, he argues, enlarged the grounds for recusation by providing that a judge may be recused when he is "biased, prejudiced, or personally interested" in the cause. La.Code Crim.Proc. art. 671(1) (1966).
Undoubtedly Article 671(1) of the 1966 Code does enlarge the grounds for recusation by adding bias and prejudice to personal interest in the cause. These causes, however, must be such that the judge would be unable to conduct a fair and impartial trial, and the disqualifying bias, interest, or prejudice must be of a substantial nature.
Although the grounds for recusation are no longer limited to "interest" as it was when the Laborde case was decided, the principle expressed there that the recusation must be based upon more than mere general conclusory allegations remains viable and relevant to the issue.
That is what we find here: a general allegation that this judge is unable to conduct a fair and impartial trial because he acted in the capacity of assistant district attorney in matters affecting defendant many years before. Nothing in the record discloses what the judge did as assistant district attorney, what the cases referred to were about, or other facts and information which would support: a finding that the judge was substantially "interested", "biased" or "prejudiced". Aside from the fact that an inference of bias does not follow from these facts, it is important to understand that the trial judge in this case did not decide the question of guilt or innocencethe jury having been charged with that responsibility. State v. Austin, 258 La. 273, 246 So.2d 12 (1971).
It is also contended that the decision in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is controlling here and supports the argument that the judge's activity as an assistant district attorney requires his recusation. In the Coolidge case the Attorney General, who served as chief prosecutor at the trial, had personally taken charge of the investigation and prosecution of a criminal case of widespread public interest. During the investigation he also, in the role of justice of the peace, issued a search warrant to search the automobile of the accused.
The Court held that the warrant authorizing the search of the automobile was invalid on the ground of its not having been issued by a neutral and detached magistrate, and the seizure and subsequent search of the automobile could therefore not constitutionally rest upon such a warrant. It is evident that the Coolidge case is not authority here. The case does not deal with actions in the far distant past of a prosecutor turned judge on some vague charge of participation in past criminal cases against the defendant. Instead the Coolidge case involves action by the prosecutor in the very case then being prosecuted.
Nothing in this record demonstrates that a ground for recusation has support, or that, in the conduct of the trial, the judge's conduct was anything other than fair and impartial. Defendant was not, therefore, for this reason, deprived of an impartial trial. La.Const. art. I, § 16 (1974).

Assignment No. 2
A motion to suppress evidence of identification was filed on behalf of the defendant, a hearing was held and the motion was denied. This assignment relates to that ruling.
When the police responded to the call that an armed robbery had occurred at the Harrison Avenue Pharmacy, the victim, Skinner, a pharmacist and owner of the drugstore, gave a detailed description of the perpetration of the crime. From this description the police recognized Maduell as a suspect they had previously handled. They had a photograph of Maduell in a *825 briefcase in their automobile which they displayed to Skinner, with photographs of five other persons. Skinner identified Maduell. Two other witnesses to the crime, Ruth Verneville and Clayton Peters, said that Maduell's photograph resembled the robber, but they could not be sure unless they saw him in person.
In the meantime other officers, who had received Maduell's description over their car radio, located Maduell, advised him that he was a suspect and asked him to accompany them to the scene of the crime. When they arrived, within 45 minutes after the robbery, Skinner and the other witnesses identified Maduell as the robber.
It is the defense contention that instead of being brought to the scene of the crime for identification, the accused should have been exhibited to the pharmacist and the other witnesses in a police lineup, since Skinner had already identified Maduell, and two other witnesses had made tentative identifications in a photographic lineup. The procedure employed in this case is said to result in an unduly suggestive identification.
On a number of occasions this Court has approved in-field identifications closely associated in time with the criminal transaction. Prompt confrontations were then recognized as promoting fairness by assuring reliability and the expeditious release of innocent suspects. State v. Bland, 260 La. 155, 255 So.2d 723 (1971); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
The claim that the photographic lineup was unduly suggestive of the suspect's infield identification is not supported by the facts of this case. A presumption of impermissible suggestion does not arise under these circumstances, and no other facts have been pointed out to support the contention.
Moreover, Skinner's in-court identification of Maduell had its source independent of these out-of-court identifications. Skinner had known Maduell for some time prior to the robbery, although he had not seen him for a while. Maduell and his family had lived in the neighborhood and patronized the drugstore. While the robbery was in progress, Skinner was in close contact with Maduell for about five minutes, and during much of this time the accused's face was uncovered.
To a lesser extent, the same is true of the witnesses Peters and Verneville. Peters and Verneville observed Maduell during the entire time he was in the drugstore. Thus, assuming that the out-ofcourt identifications were tainted, the independent source of the in-court identifications were sufficient to permit identification free of the alleged taint arising from the out-of-court identification. Under the totality of these circumstances nothing occurred which was conducive to irreparable mistaken identification, or unduly affected the reliability of the identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Kirkland, 260 La. 1011, 257 So.2d 693 (1972); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).
Another contention made in connection with this assignment of error is that Section 13 of Article I of the Constitution of 1974 requires that
"When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel."
As applied to this case, the defense argues the constitution requires that Maduell should have been provided with counsel at his in-field indentification. This contention is made despite the settled rule established by the jurisprudence that counsel *826 need not be furnished at pre-indictment lineups. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Kirkland, 260 La. 1011, 257 So.2d 693 (La.1972). In effect, it is asserted, that Louisiana's Constitution imposes a standard more stringent than that established by the jurisprudence.
Clearly, at the time of the in-field identification, defendant was not "arrested". It was not until the in-field identification was made that the arrest took place. And there is some doubt whether the facts of the case can support a finding that the defendant was "detained" within the contemplation of the constitution. He was "asked to accompany" the officers to the scene of the crime where the in-field identification took place; and "he agreed to do so." Nevertheless, the record reflects that as soon as the officers confronted Maduell, he was told that they "were investigating an armed robbery and he was a suspect in the matter." Also, the officers testified that "we verbally advised him of his rights." Thus the constitutional requirement was satisfied. The constitution does not require, in addition, that counsel be provided at the in-field identification. If the defendant is fully advised of rights enumerated in Section 13 of Article I, the constitution is satisfied.
In State v. Kirkland, supra, this Court found that the exigencies of the situation make it impracticable to afford counsel to a suspect at pre-indictment identification. Where the defendant has been informed of his rights, therefore, the constitution does not abrogate the rule that counsel need not be furnished the accused at a pre-indictment lineup. That rule continues to have vitality. Furthermore, the due process rights of an accused who is identified at a pre-indictment, in-field confrontation are protected by the rule imposing the burden upon the State to establish that the identification procedure was conducted fairly and without undue suggestion. It is also pertinent to this determination to understand that even if counsel were present he could not prevent the presentation of the accused to the victim or witnesses in a properly conducted in-field or line-up identification procedure.
This assignment has no merit.

Assignment Nos. 3, 6, 7, 8, 9, 10 and 11
These assignments pertain to a ruling denying defendant's motion to suppress physical evidence obtained as a result of a search and seizure alleged to be unreasonable, illegal and made in violation of the Fourth Amendment to the Federal Constitution. When the objects seized in the search were introduced in evidence defense counsel objected and assigned these errors.
Skinner, the victim of the robbery, and the parties who witnessed the robbery in progress, gave the investigating officers who arrived at the scene shortly thereafter a description of the clothing, eyeglasses, facial hair, etc., which the robber was wearing. These were the objects which were introduced into evidence over the defense objection.
After Maduell was identified by the victim at the scene of the crime and arrested, the officers returned to the house where they found him initially. They were permitted entrance by Mrs. Maduell and, as they walked through the house, the objects referred to by the victim were spread about in several locations in plain view. There was no prying into cupboards, drawers, closets, etc., and consequently no search.
Upon this basis the officers applied for and obtained a search warrant with which they later seized these objects at the Maduell residence.
These assignments are based upon the contention that the location and existence of these objects in the Maduell house were ascertained during the first visit of the officers to the Maduell residence following his arrest. Entrance was gained, it is asserted, *827 without permission. Thus an illegal search took place and the information thus obtained was the fruit of the poisonous tree. A search warrant issued on this information was therefore founded upon illegally obtained information which could not support the probable cause necessary to a valid warrant.
The contention is without merit. Information supporting the issuance of the search warrant was obtained from the victim of the crime and the people who witnessed the robbery in progress. This information was verified and the objects involved were located in plain view in the Maduell residence which the officers entered with the permission of Mrs. Maduell. She had apparent authority to grant this permission in her husband's absence.
This view of the facts, which is supported by the record, leaves us with the conclusion that the information and evidence supporting the issuance of the search warrant came to the attention and possession of the police by valid and legal means. There was, therefore, no error in the ruling of the trial judge refusing to suppress the evidence and permitting its introduction.

Assignment No. 4
According to Article 795 of the Code of Criminal Procedure:
"A juror cannot be challenged for cause by the state or the defendant after having been accepted by the challenging party, unless the ground for the challenge was not known by the challenging party prior to acceptance. . . ."
Counsel contends that this provision allows defendant the opportunity to challenge prospective jurors up until the time that they are sworn. Therefore, he objected to the denial of his motion to further interrogate the jurors after they had been accepted.
The circumstances surrounding the ruling and objection disclose that at a session of court on February 19, 1975, the prospective jurors were examined on their voir dire and twelve jurors and one alternate were accepted. Court was then adjourned until February 24 at 10:00 o'clock in the morning. When court met on February 24, the jury was seated in the box and the alternate juror was discharged. Both the State and the defense announced ready, and the judge ordered the trial to begin.
At that time defense counsel announced:
"Your honor it has come to my attention that several of these jurors live in the immediate vicinity of this drug store and I know we asked if they recognized the name, but I would like to make a motion that they be interrogated further . . . ."
In his per curiam, the trial judge states that the jurors had been sworn and accepted when the defense motion was made. This statement is challenged by defense counsel on the basis of minute entries and an extract from the transcript which are negative on the subject and neither support nor refute the per curiam of the trial judge.
On the basis of the trial judge's per curiam statement that the jurors had been sworn, the defense motion to further interrogate the jurors was properly denied. Whether the ground for challenge was not known to the challenging party prior to acceptance of the jurors was a question of fact to be determined by the trial judge. His finding on this fact question should not be reversed unless clearly erroneous. Nevertheless, accepting defense counsel's statement that he was unaware of the fact that several of the jurors lived in the "immediate vicinity's of the drugstore where the robbery occurred, we are unwilling to find on this sketchy record that this fact was either a ground for challenge for cause or a basis for upsetting the ruling of the trial judge and reversing this conviction.

*828 Assignment No. 5

When Officer Roth testified on direct examination that hair found in Maduell's house appeared to be half-inch moustache facial hair defense counsel objected, the objection was overruled and the ruling is assigned as error. The argument is that Officer Roth was not qualified as an expert and could not give his opinion that the hair was moustache hair as opposed to sideburn hair, hair from hands, legs, etc.
Aside from the fact that the ground for objection was not stated at the time of the occurrence, La.Code Crim.Proc. art. 841, a review of the testimony indicates that Maduell shaved his moustache almost immediately after the robbery, and the officers found the shavings in the bathroom. Pictures of Maduell before and after the robbery and his identification by Skinner, who witnessed the robbery and saw him shortly thereafter, set this fact at rest. With this knowledge, it was permissible for the detective to voice his conclusion that based on his investigation the hair was Maduell's moustache hair. "A witness may state a natural inference from something he has observed, or an impression made on him from certain facts." State v. St. Amand, 274 So.2d 179 (La.1973).

Assignment No. 12
Although the defense acknowledges this Court's holding in State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), revd. on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 that a criminal defendant is not entitled to a jury trial in a multiple offender proceeding, it is asserted that the procedure prescribed for the imposition of an enhanced penalty under Section 529.1 of Title 15 of the Revised Statutes makes a multiple offender proceeding "a criminal case" within the meaning of Section 17 of Article I of the Constitution of 1974. Pertinent parts of that provision, referring to "criminal cases", prescribe that "A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict."
The argument on this assignment is that the multiple offender proceeding is a criminal case because, as in a criminal case, the state must initiate the proceeding by filing a separate bill of information; the defendant has the right to counsel; the accused must be arraigned and enter a plea; the state has the burden of proving the charges; and there is a right of appeal. While the decision in State v. Vale, supra, may have been well-founded under the Constitution of 1921, the defendant contends the same result cannot be reached under the new constitution.
The contention is without merit. The relevant provision of the 1921 constitution also refers to "cases"; its meaning is identical with the 1974 Constitution: "[C]ases in which the punishment is necessarily at hard labor (shall be tried), by a jury of twelve, nine of whom must concur to render a verdict . . . ."
Our decision in State v. Vale was founded upon constitutional authority which was no different from the authority relied upon by defendant in the 1974 Constitution. The result is therefore the same.
The multiple offender statute, La.R.S. 15:529.1, does not require that such a proceeding be tried by a jury. The questions required to be determined by the proceeding are purely questions of fact; they do not relate to facts bearing upon guilt or innocence at issue because of the alleged violation of a law defining and punishing a crime.
"The Constitution in providing for trial by jury in a certain specified class of cases has reference to cases where the defendant is prosecuted for the violation of some penal statute. There is no provision in the Constitution that we have been able to find which authorizes or requires questions of fact not pertaining *829 to guilt or innocence of a defendant to be submitted to a jury." State v. Guidry, 169 La. 215, 124 So. 832 (1929).

Assignment No. 13
This assignment is based upon three allegations contained in defendant's motion to quash the bill of information filed against him.
First: The motion alleges that the information fails to charge an offense punishable under a valid statute because the multiple offender statute (La.R.S. 15:529.1) is unconstitutional; it is contrary to Section 20 of Article I of the Constitution of 1974 which grants full rights of citizenship "upon termination of state and federal supervision following conviction for any offense"; and it is also contrary to Section 5(E) of Article 4 which automatically pardons first offenders upon completion of sentence.[1]
The effect of these two constitutional provisions, the defense argues, is to automatically grant constitutional pardons for past offenses upon completion of supervision. Defendant also relies upon the holding of this Court in State v. Childers, 197 La. 715, 2 So.2d 189 (1941) that a defendant could not be punished as a second offender after a pardon by the governor for a first offense. See also State v. Lee, 171 La. 744, 132 So. 219 (1931).
It is unnecessary to resolve this contention in the instant case because the Constitution of 1974 has prospective operation only. Under its provisions automatic pardons are granted only where the offense was committed on or after January 1, 1975, the effective date of the new constitution. Maduell's first offenseobtaining morphine by fraudoccurred in 1962, and he completed that sentence before 1969. His second offenseburglarywas committed in 1970; and supervision under that conviction ceased prior to December 1974 when the offensearmed robberywhich is the subject of the instant prosecution occurred. The automatic pardon provision of the constitution does not apply here, for Article XIV, Section 26, denies retrospective operation:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
Second: The motion alleges that the trial court lost jurisdiction to conduct this multiple offender proceeding because a valid sentence had been imposed for the armed robbery conviction and an appeal from that conviction had been granted. The record reflects that the bill of information to enhance the penalty was filed on February 27, 1975, after verdict but before sentence. Sentence on the armed robbery verdict was imposed on February 28, 1975, defendant orally moved for an appeal "to be supplemented with a written motion," and the hearing on the enhanced penalty proceeding was set for March 5, 1975. On March 5 defense counsel filed a motion for appeal from his conviction and sentence on the armed robbery charge, which motion the Court ordered received and filed. During this same session of court the multiple offender proceeding was conducted, the court ordered the sentence imposed in the armed robbery conviction vacated and sentenced Maduell to serve 100 years.
To support this second allegation of the motion to quash the defense relies upon Article 881 of the Code of Criminal Procedure *830 which authorizes the trial judge to amend or change the sentence only "prior to the beginning of execution of the sentence." Article 916 is also authority for the proposition, defendant contends, that "jurisdiction of the trial court is divested and that of the appellate court attaches, upon the entering of the order of appeal.. . ." Thereafter, the trial court has no jurisdiction over the matter except in certain instances enumerated in Article 916 which do not refer to vacating a sentence and imposing an enhanced penalty in a multiple offender proceeding.
The answer to this contention is found in the multiple offender statute (La.R.S. 15:529.1) which specifically permits the filing of a bill of information "at any time, either after conviction or sentence."
The provisions of the Code of Criminal Procedure are apparently in conflict with Section 529.1 of Title 15 of the Revised Statutes. However, the Code articles are broad provisions applying to criminal trials generally; whereas, Section 529.1 is a special enactment dealing specifically with details which pertain to habitual offenses only.
In these circumstances, where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict the latter will prevail.Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971); Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969); State v. Mejia, 250 La. 518, 197 So.2d 73 (1967); Sands, Sutherland Statutory Construction § 51.05 (4th ed. 1973).
Third: Finally, the motion to quash alleges that the multiple offender proceeding cannot be prosecuted by a bill of information. The proceeding must be instituted by a grand jury indictment in light of the guarantee in Section 15 of Article I of the Constitution of 1974 that "no person shall be held to answer for . . . a crime punishable by life imprisonment except on indictment by a grand jury." The penalty imposed here was 100 years; at least lifeas we understand the contention.
"The multiple offender statute is an enhancement-of-penalty provision. It is not a new prosecution for an offense." State v. Jackson, 298 So.2d 777 (La.1974). Therefore, it does not fall within the constitutional requirement that the proceeding is one in which the defendant must "answer for . . . a crime punishable by life imprisonment." The multiple offender proceeding is for enhancement of penalty on account of multiple offenses for which the defendant has previously "answered".

Assignment No. 14
Defense counsel argues, in effect, the statute (La.R.S. 15:529.1) requires that for a prima facie case to be presented in a multiple offender proceeding the certificate of the warden attesting to the incarceration of the defendant must be introduced. This is true. However, this does not mean that other evidence could not establish the requisite elements for imposition of the enhanced penalty. Here the testimony supports the finding of the trial judge that defendant was a multiple offender as defined by the statute.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Insofar as pertinent here, Section 5(E) of Article IV of the Constitution of 1974 provides: ". . . a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor." State v. Guidry, 169 La. 215, 124 So. 832 (1929). See also State v. Williams, La., 326 So.2d 815.