342 So.2d 624 (1977)
STATE of Louisiana
v.
David L. FIELDS, Sr.
No. 58449.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied February 25, 1977.
*626 Anthony C. D'Antonio, New Orleans, Greenberg & Dallam, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
SUMMERS, Justice.
An indictment returned by the grand jury of Jefferson Parish on May 16, 1975 charged that David Fields committed second degree murder of Norman Newton on February 26, 1975. La.Rev.Stat. 14:30.1. He was tried, convicted and sentenced to imprisonment for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. Four assignments of error are urged on this appeal.
The State's principal witness, Joy Thigpen, testified that shortly after 7:30 p. m. on February 26, 1975 she was at Sally's Beauty Company where Norman Newton was the manager. She was waiting for him to return to the store to lock up. While sitting near the front window of the store, she saw Newton drive up to the front. He was followed by a man in a blue-white '73 or '74 Ford LTD. As the cars came to a stop Norman's pursuer pulled a gun and made him get out of the car. Thigpen then heard loud voices and saw Norman's assailant shoot him three times.
Defendant was later identified by the witness Thigpen and one Tamporella, an employee of Ryder's Truck Rental, a business adjoining Sally's Beauty Supply. The defense was alibi. Both Fields and his wife testified that he was at home when Newton was murdered. The gun and the car driven by Newton's killer were never located by the State.

Assignment 1
Prior to calling the first witness, the State moved that the jury be withdrawn in order to establish the predicate for introduction of a written statement obtained by Detective Joe Perez from the defendant. When the jury was withdrawn, defense counsel objected to any written statement taken from Fields and moved for a mistrial because no such statement was referred to in the prosecutor's opening statement. No ruling was made at this time.
The State then proceeded with the testimony of Detective Perez. He testified that Fields agreed to go to the Detective Bureau with him and Sergeant Claverie on the morning of March 18, 1975, where he voluntarily gave a statement after having been advised of his rights. Detective Perez typed the statement which Fields signed. Perez and Claverie signed as witnesses.
After establishing that the statement was free and voluntary, the State introduced it into evidence. Apparently no defense objection to the introduction of the statement was urged at that time. Nevertheless, on the basis of the initial objection to testimony concerning such a statement and the motion for a mistrial, the defense contends that evidence of the statement and its introduction constitute reversible error. This contention is based upon the argument that the defense statement was not referred to in the State's opening statement.
Article 767 of the Code of Criminal Procedure declares "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant." At the same time Article 769 states that "Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence." However, the second paragraph of *627 that article provides that "If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."
In order that a confession, which cannot be mentioned in the opening statement, may be used in evidence, Article 768 of the Code requires that, in lieu of mentioning confessions in the opening statement by the prosecutor and to avoid surprise to the defendant, the State "shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
In the instant case the District Attorney advised by motion in the record that it was his intention "to use the written statement of the defendant given to Detective Joe Perez at the Jefferson Parish Sheriff's Office Detective Bureau on March 18, 1975, in the trial of the merits of this case."
This notice did not refer to a "confession" or "inculpatory statement" as contemplated by Article 768. And the statement when reviewed does not appear to be either a confession or inculpatory statement. Technically, then, it is not such a statement which required the State to give the defense notice that it would be used.
Therefore, the logical inquiry is whether the statement is fairly within the scope of the opening statement, for, if it is, it is admissible. And the converse is true; if the statement can not be said to be fairly within the scope of the opening statement it is inadmissible. La.Code Crim.Pro. art. 769.
It is this Court's understanding that evidence not specifically referred to in the opening statement, but which by implication can be considered within the scope of the opening statement is admissible. The Code of Criminal Procedure requires only that the State set forth in "general terms" the nature of the evidence by which the State expects to prove the charge. La.Code Crim.Pro. art. 766. The importance of Articles 766 and 767 is their design to avoid surprise to the defendant and prevent prejudice. State v. Jones, 230 La. 356, 88 So.2d 655 (1956); State v. McLean, 211 La. 413, 30 So.2d 187 (1947). See also State v. Eubanks, 240 La. 552, 124 So.2d 543 (1960). Their purpose is to put the defendant on notice of what the State intends to prove. These objectives have been attained here.
In his opening statement the prosecutor mentioned that he would call several police officers to testify to their part in the investigation of the crime, to the evidence they discovered, and the witnesses they interviewed. Defendant's statement was part of the testimony of Detective Perez, part of the information gained in his investigation to which the prosecutor specifically referred in his opening statement. The statement was, therefore, fairly within the scope of the opening statement.
If it were considered that the evidence was inadvertently and in good faith omitted from the opening statement, the court, in its discretion, could admit it into evidence if the defendant was not taken by surprise or prejudiced in his defense. La. Code Crim.Pro. art. 769. There is no claim of deliberate omission or bad faith on the part of the State; and no claim of surprise or prejudice in the defense can be claimed because the quoted notice required by Article 768 was given in advance of trial, fully informing defendant that the statement would be used as evidence at the trial.
This assignment is without merit.

Assignment 2
While the jury was withdrawn to allow the State to establish the predicate for the defendant's statement by Detective Perez, Sergeant Claverie was seated at counsel's table with the prosecuting attorney. Defense counsel moved that, inasmuch as he was not a member of the bar, he should not be allowed to sit at counsel's table during the prosecution of the case. Defense counsel argued Sergeant Claverie should be required to sit in the spectator section of the *628 courtroom. It was the defense contention that the presence of a representative of the sheriff's office at the prosecutor's table "looking directly at them down their throat so to speak" would affect the testimony of the witnesses.
The basis for the defense contention is that "[t]he district attorney may employ or accept the assistance of other counsel in the conduct of a criminal case", La.Code Crim. Pro. art. 63, but there is no authorization to permit a nonlawyer to assist in the prosecution. Nevertheless, the trial judge ruled that allowing the deputy sheriff to sit at the bar next to the assistant district attorney during the trial was proper, where the deputy did not actively participate in the trial and was needed to confer with the prosecutor concerning the facts as the evidence unfolded at the trial.
Article 63 does not contemplate that the district attorney has the right to employ or accept the assistance of a person who is not an attorney at law to actively conduct a trial in the prosecution of a case. State v. Henry, 196 La. 217,198 So. 910 (1940). This does not mean, however, that the trial judge may not, in his discretion, permit the prosecutor conducting the case to employ persons who are not lawyers to assist him at counsel's table.
There is no intimation from this record that the prosecutor used Sergeant Claverie in this manner for the purpose of intimidating witnesses or to otherwise affect the free and impartial conduct of the trial. There is, therefore, no merit to this assignment.

Assignment 3

Not briefed. Abandoned.
Assignment 4
Defendant was placed in a lineup and identified by witnesses on May 2, 1975, approximately two months after his arrest. Thereafter, on May 16,1975 he was indicted by the grand jury. The defense maintains that the trial court committed error when it allowed the State to introduce testimony of this lineup because the defendant was not represented by counsel.
While conceding that this Court has consistently held that a person accused of crime is not entitled to counsel during preindictment lineup, defense counsel contends such a denial deprives the accused of due process of law as guaranteed by the fifth amendment of the Federal Constitution and Section 2 of Article I of the Louisiana Constitution of 1974.
Decisions of this Court do not prohibit or deny the accused the right to counsel at a lineup. These decisions do hold, however, that pre-indictment lineup is not a stage of the proceeding at which counsel must be present to guarantee state due process. La.Const. art. I,§ 13; State v. Johnson, 327 So.2d 388 (La.1976). See also State v. Hargrove, 330 So.2d 895 (La.1976); State v. Maduell, 326 So.2d 820 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976), cert, denied, 425 U.S. 997, 96 S.Ct. 2213, 48 L.Ed.2d 822 (1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Nero, 319 So.2d 303 (La.1975); State v. Bland, 310 So.2d 622 (La.1975); State v. Lawrence, 294 So.2d 476 (La.1974); State v. Edgecombe, 275 So.2d 740 (La.1973), cert, denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973). Decisions of the United States Supreme Court are to the same effect, relative to federal due process. See Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).
In the instant case defendant was fully aware of his right to counsel, having been advised to that effect and having consulted counsel since his arrest. Apparently defendant did not choose to have his attorney present. The opportunity to have counsel present was not denied the accused.

There is no merit to this assignment.
Assignment 5
Two statements made by the prosecutor in the State's closing argument are said to be expressions of his personal opinion of the defendant's guilt from facts outside the record and, as such, to constitute reversible error. The statements are:

*629 "Maybe he did fix that lawnmower. I think he probably did but it wasn't on that night or if it was it wasn't during that time. It wasn't at that time on that night because at that time on that night David Fields was shooting Norman Newton dead. That's what he was doing."
In another part of the closing argument the prosecutor said: "David Fields should not be off. He killed this man. This man is lying in his grave today and it's because David Fields shot him."
Although no contemporaneous objection was made to these statements at the time of the prosecutor's argument as required by Article 841 of the Code of Criminal Procedure,[1] the defense contends that noncompliance with Article 841 cannot deprive defendant of the constitutional right to review of this alleged error on appeal which Article I, Section 19 guarantees in these terms:
"No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived."
This contention has been fully answered by this Court's decision in State v. Marcell, 320 So.2d 195 (La.1975):
"Notwithstanding the foregoing, counsel for defendant argues that under the provisions of Article 1, § 19 of the Louisiana Constitution of 19742 defendant is
2 Article 1, § 19 provides in pertinent part:
`No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived.'
entitled to a review of his assignments of errors despite the failure of trial counsel to object at the time the alleged errors occurred. Defendant interprets Article 1, § 19, guaranteeing a defendant the right of review unless the defendant intelligently waives that right, as meaning that a defendant does not lose his right to a review of trial errors unless he knowingly and intelligently waives his right to object or his right to demand a mistrial. He cites Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) for the proposition that an accused should not be presumed to have exercised a deliberate choice because of silence or inaction, and Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) for the proposition that a waiver must be the product of an understanding and knowing decision of the accused himself, who is not necessarily bound by the decision or default of his counsel.
"Because Barker involved an alleged waiver of the right to a speedy trial and Humphrey a waiver of state remedies such as would bar federal habeas corpus relief, we do not find those cases dispositive of the issue with which we are here concerned. We would apply the principles of waiver expressed in Barker and Humphrey if in the instant case defendant were before us seeking an out of time appeal, arguing that while his counsel may have failed to take the proper steps to perfect an appeal, he himself had not intelligently or knowingly participated in that decision or neglect. We read Article 1, § 19 of the Louisiana Constitution of 1974 as establishing the right to an appeal and as conferring on the accused, and the accused alone, the right to waive this right. But it is apparent that defendant in the instant case has been afforded his right to appeal. His conviction is properly before this Court for appellate review, and we have reviewed his conviction insofar as Art. 841, C.Cr.P. allows.
The requirement of an objection shall not apply to the court's ruling on any written motion."

*630 The problem is thus not that defendant is being denied the right to an appeal, but that the extent of this appellate review has been limited by the failure of his trial counsel to object to alleged errors occurring during trial.
"The contemporaneous objection rule, as embodied in Article 841 of the Louisiana Code of Criminal Procedure, is necessary in order to promote judicial efficiency and in order to prevent a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors that might easily have been corrected by objection at trial. The rule is a reasonable one when viewed in light of the Sixth Amendment right to counsel, for an accused is not forced into a trial to fend for himself, but is instead afforded the opportunity to be represented by counsel trained in the intricacies of the law. While an accused may easily be informed of or educated in some of his fundamental rights and options, such as the right to assistance of counsel, the right to a speedy trial, and the right to exercise the privilege against self-incrimination, such education is not possible when it comes to the intricate and numerous rules governing trial by judge or jury. Consequently, during the course of trial, a defendant must rely upon his counsel, and the acts and choices of counsel are deemed to be those of the defendant himself. Where it appears that counsel has failed in his professional duty toward a defendant, our system affords a defendant relief through a writ of habeas corpus alleging incompetent or ineffective counsel, in effect the deprivation of the right to the assistance of counsel. Competence or incompetence of that counsel is not before us in this appeal.
We conclude, therefore, that Article 841 of the Louisiana Code of Criminal Procedure does not violate Article 1, §19 of the Louisiana Constitution of 1974. While the constitutional provision does afford each defendant the right to judicial review based upon a complete record of all evidence upon which the judgment is based, the extent of this right is circumscribed by reasonable procedural formalities and requirements, including contemporaneous objections and the filing of assignments of error."
This assignment has no merit.
For the reasons assigned the conviction and sentence are affirmed.
PER CURIAM.
Rehearing denied. Defendant is relegated to post-conviction procedures to litigate the new matter raised in the application for rehearing (the denial of counsel at the line-up).
SUMMERS, J., is of the opinion the rehearing should be denied without qualification.
SANDERS, C. J., is of the opinion that the rehearing should be denied.
NOTES
[1] La.Code Crim.Pro. art. 841 provides:

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
"The requirement of an objection shall not apply to the court's ruling on any written motion.'
"No person shall be subjected to imprisonment or forfeiture of rights or properety without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived.'