368 So.2d 1016 (1979)
STATE of Louisiana ex rel. David L. FIELDS
v.
Ross MAGGIO, Warden, Louisiana State Penitentiary.
No. 62997.
Supreme Court of Louisiana.
March 5, 1979.
Rehearing Denied April 9, 1979.
*1018 Anthony C. D'Antonio, New Orleans, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., P. Mike Cullen, Abbott
J. Reeves, Asst. Dist. Attys. for defendant respondent.
DIXON, Justice.[*]
Shortly after 7:30 p. m. on February 26, 1975, Norman Newton was driving to Sally's Beauty Company in Jefferson Parish where he was employed as store manager. He was pursued by a man in a white and blue Ford LTD who forced Newton from his car in front of the store and, after an argument, shot and killed him. On March 18, 1975, David Fields and Richard Smith were picked up by the police for investigation. During the course of the day, Fields gave the police a written statement and submitted to two polygraph examinations; he and Smith were released in the late afternoon.
On May 2, 1975, Fields was arrested and was identified in a line-up at the station house. Two weeks later he was indicted for the second degree murder of Newton. He was thereafter convicted as charged and was sentenced to life imprisonment without eligibility for parole, probation, or suspension of sentence for twenty years. On appeal his conviction and sentence were affirmed. 342 So.2d 624 (La.1977). In denying a rehearing, this court noted that Fields was "relegated to post-conviction procedures to litigate the new matter raised in the application for rehearing (the denial of counsel at the line-up)." 342 So.2d at 630.
The relator thereafter applied to the district court for a writ of habeas corpus alleging this and several additional grounds for relief through original and amended petitions. After evidentiary hearings were conducted on September 15 and September 29, 1977, the trial court denied relief on all grounds. Fields then applied to this court to review the judgment, and a writ was granted on October 10, 1978. 363 So.2d 220 (La.1978).
GROUND NO. 1
The relator contends that the trial court erred in denying habeas corpus relief on the *1019 ground that the prosecution suppressed evidence favorable to his defense. This contention is based on the testimony of Jack Herbert, an employee of a truck rental service located near Sally's, who stated that he had given the police the license number of the automobile used by Newton's killer.
Herbert testified that he did not see the actual shooting, but that he did see the LTD race away after he heard shots. He immediately scratched its license number on a ramp, then wrote the number on the order sheet he was holding, and at some later point wrote the number on a scrap of paper. He then called the police to report the crime and was fairly certain that he told the license number to the police operator. He did not relate the same information to the officers who arrived at the scene because he had misplaced the scrap of paper by that time. Subsequent efforts to find the paper or to locate the work order proved fruitless.
It is first somewhat questionable whether the police ever received the information concerning the license plate number. Herbert stated that he thought he had given the information to the police operator, but the tapes of incoming calls are unavailable because they are erased and reused as a matter of routine procedure. The record fails to establish that the prosecution was ever aware that Herbert at one time possessed the license number of the assailant's car.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court declared a prosecutor's withholding of favorable evidence from the defense to be a violation of due process. However, in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the court decided that in the absence of a request for the exculpatory material (which is the case here), the prosecution has a duty to disclose only such evidence which could create a reasonable doubt about the defendant's culpability.
In this context, the license number of the Ford LTD has no inherently exculpatory value, since such evidence could only have proved that the car was registered to someone other than Fields. At trial several witnesses gave evidence linking Fields to the blue and white LTD. In addition, Indio Gennaro, a Harahan police officer, testified that Fields had told him the car was a gift from a friend and that the title had not yet been transferred to his name. Therefore, the license number would not by itself have raised a reasonable doubt of guilt in light of testimony connecting Fields with the car, and might have easily led the investigation back to him.
This argument contains no ground for relief.
GROUND NO. 2
The relator asserts that unnecessarily suggestive pre-trial procedures resulted in his identification at trial. The relator relies on the testimony of Jack Herbert who stated that police officers attempted to persuade him to identify Fields as the killer by showing him Fields' picture and by characterizing him as "a bad dude." His statement was corroborated by his wife, who testified that Herbert told her the substance of this conversation when they later discussed the incident. At trial Herbert testified that David Fields was not the man he saw driving away after Newton was killed.
In addition, the relator refers the court to the deposition of Barbara Maxwell Rushing, taken on April 17, 1978, in which she recanted her trial identification of Fields. Ms. Rushing testified at trial that she had spoken with the man in the LTD on a number of occasions in the course of her work as a security guard for a company with offices near those of Sally's Beauty Company. She then identified the defendant as the man she had seen in the car. In her 1978 deposition, she alleges that her trial testimony resulted from her enthusiasm to help the police and, by doing so, to enhance the reputation of her employer, Best Investigation Security. She then unequivocally stated that Fields was not the man she had seen in the Ford.
*1020 The relator does not argue that Rustling's recanting by itself is a ground for granting relief. See State v. Linkletter, 345 So.2d 452 (La.1977). Instead, Fields contends that the evidence of suggestive practices attested to by Herbert, coupled with Rushing's recantation, places the burden on the state to prove that the identification made by the other witness, Joy Thigpen, was not a result of error or undue police suggestion.
We cannot accept the argument that the state must carry this burden. In State v. Judson, 329 So.2d 742 (La.1976), we held that the defendant must prove that a line up identification was impermissibly tainted. The relator has been unable to show the presence of suggestive practices when Joy Thigpen identified him by his photograph and later at the line-up. Moreover, Rushing makes clear in her deposition that her identification of Fields as the murderer was in no manner prompted by the police, but by her own desire to please her employer. Among the several photographs shown her, she selected Fields' because there was a superficial resemblance between his picture and the killer.
In any event, due process is violated by the likelihood of misidentification, and not merely by suggestive identification procedures. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, 353 So.2d 1005 (La.1977). In Guillot, this court indicated that the corrupting effect of a suggestive identification would be balanced against the five factors announced in Manson v. Brathwaite, supra: the witness' opportunity to view the crime; the degree of attention paid by the witness; the accuracy of any prior description; the level of certainty displayed at the confrontation; and the amount of time between the crime and the confrontation.
In this case the suggestiveness of the identification procedures is a matter of speculation, and was specifically denied by the police officers at trial. On the other hand, Thigpen testified that her view of the crime was quite good, and that her attention was fixed on the two men. She also identified Fields' picture within a few days of the crime and subsequently identified him at the line-up. In light of these factors, it is reasonable to conclude that her identification had a source independent of any assumed taint resulting from suggestive police practices.
The second argument asserted by the relator concerns the line-up conducted at the police headquarters on May 2, 1975, after Fields was arrested but before he was indicted. Fields argues that he was not only denied his right to counsel at the line-up, but also that he was duped by the police into believing that an assistant district attorney, Abbott Reeves, was his lawyer.
The testimony taken at the evidentiary hearing established that Leonard Jaeger, a long-time friend of the relator, was with Fields when he was arrested and promised that he would have counsel for him by the time the line-up was conducted. To this end, Jaeger contacted a local attorney, Frank Langridge, and asked him to represent Fields. Through a misunderstanding, Langridge failed to appear at the appointed time, and Jaeger began to telephone various attorneys in an unsuccessful attempt to secure counsel for Fields. He also informed the police officers of his efforts.
Jaeger testified that Reeves was introduced to him as Fields' attorney and that he assumed that Reeves had been appointed by the court. Fields, on the other hand, assumed Reeves to be Langridge when they were introduced in the same manner. Sergeant Claverie related a different version of the events in question. According to his testimony, he called Reeves to attend the line-up as an observer when it appeared that Fields would not have an attorney present. Claverie also stated that he apprised Fields of Reeves' position, and that Fields did not appear to object.
In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Supreme Court held that the presence of counsel at a pre-indictment line-up was not a requirement of due process. This court *1021 has followed Kirby in a number of decisions State v. Hargrove, 330 So.2d 895 (La.1976); State v. Johnson, 327 So.2d 388 (La. 1976)  although we have recently indicated that the Kirby rule may be too broad in some instances, such as where the state denies the defendant access to retained counsel. State v. Smith, 357 So.2d 798 (La. 1978); State v. Holmes, 354 So.2d 1282, 1287 (La.1977) (Tate and Dennis, JJ. concurring); State v. Spears, 350 So.2d 603, 607 (La.1977) (Calogero, J. concurring). Nevertheless, it is clear that Fields had no retained counsel at the time of the line-up and, therefore, was not prejudiced. Reeves' presence did not contribute to the absence of counsel for Fields. Fields' contention that he would not have submitted to the line-up without counsel is also without merit. As we noted in State v. Maduell, 326 So.2d 820 (La.1976), ". . . even if counsel were present he could not prevent the presentation of the accused to the victim or witnesses in a properly conducted in-field or line-up identification procedure." 326 So.2d at 826.
Finally, it is clear that the relator has failed to show the presence of any taint in the line-up procedure, or that any speculative suggestiveness led to a risk of misidentification. Manson v. Brathwaite, supra.
This argument contains no ground for relief.
GROUND NO. 3
Fields raises the issue of counsel's ineffective handling of his defense and points to his attorney's failure to file pre trial motions to suppress the line-up identification. Apparently the defense attorney (not his attorney on appeal) relied on the prospect of a plea bargain and only belatedly objected to testimony concerning the line-up identification. His motion to exclude this testimony was denied by the trial judge.
In State v. Kenner, 336 So.2d 824 (La. 1976), this court considered similar allegations of ineffectiveness of counsel and concluded that if such arguments were based on the attorney's failure to file pre-trial motions, relief was not in order absent a showing of their possible merit or that prejudice resulted to the defendant by their not being filed. Here the relator has failed to show that the line-up was suggestive, that it was tainted by a prior photographic display, or that a substantial likelihood of misidentification at trial existed. Therefore, although Fields may not be satisfied with the representation he received, the errors allegedly committed by his attorney did not deprive him of his right to the effective assistance of counsel.
The relator is not entitled to relief on this ground.
GROUND NO. 4
The relator argues that habeas relief should have been granted on the basis of violations of his right to the assistance of counsel and of his privilege against self-incrimination. These allegations stem from events on March 13, 1975, when Fields and Richard Smith were picked up by the police for investigation. During this period Fields signed a written statement which was introduced at trial over defense objections.
According to Smith, Sergeant Claverie told Fields that his attorney had called several times while he was taking the polygraph test and being interrogated, but that the police had not disturbed him. Claverie also allegedly stated that it was for the better that he had not spoken with the attorney since the attorney might have persuaded him not to cooperate as fully as he had. The relator corroborated Smith's version of this conversation. He also testified that when he finally did speak to Peter Vernaci, the attorney, he was told not to talk any more and that the police had to release him or charge him with a crime. Vernaci also spoke to Sergeant Claverie and supposedly said the same things to him. Fields stated that when he told this to Claverie, the latter replied that a request to be released would appear suspicious and would cause the police to arrest him. Claverie also allegedly continued the interrogation for another hour before ordering other policemen to take Smith and Fields to their homes.
*1022 Peter Vernaci's account of the telephone conversation differed in certain respects from the version related by Fields and Smith. Vernaci testified that he called the police station and spoke to both Fields and Claverie. He told Fields to leave if he was not under arrest and told Claverie either to let Fields go home or to arrest him. Claverie's testimony was that Vernaci told him that he could question Fields so long as he did not arrest him, but that he had already finished interrogating Fields and therefore sent him home. Claverie was never asked whether he had refused to notify Fields of earlier calls, but it is noteworthy that Vernaci mentioned only one phone call in his testimony.
In ruling on this argument, the trial judge accepted the relator's account of the events but nevertheless denied relief. In his reasons for judgment, the trial judge stated that Fields had not persuaded him that his original determination of voluntariness and compliance with Miranda, requirements was incorrect, and that the relator had also failed to show that the phone call preceded the taking of the written statement introduced at trial. The judge also stressed the absence of any prejudice arising from the use of the statement.
The defense has placed reliance on the holdings in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and State v. Jackson, 303 So.2d 734 (La.1974), as mandating the exclusion of the statement. However, the facts of Escobedo and Jackson are clearly inapposite to this case. Fields was not prevented from conferring with his retained attorney by strong-arm police tactics, as was the case in Escobedo, nor is the record clear that Vernaci actually asked that the interrogation cease, as was the situation in Jackson.
The additional reasons given by the district court for refusing relief on this ground are also persuasive. The relator has failed to establish that the statement came after Vernaci allegedly told the police to cease any interrogation of Fields. Although Fields insists that Claverie questioned him after speaking to Vernaci (a point contested by the sergeant), Fields' own testimony indicates that the statement introduced against him was taken before Vernaci telephoned him. Moreover, the statement was completely exculpatory and could not be used for impeachment, since Fields never deviated from his alibi defense. The introduction of the statement did not prejudice Fields.
This ground for relief has no merit.
GROUNDS NOS. 5 and 6
As a fifth ground for relief, the defendant argues that the results of a polygraph test undergone by Fields should have been admitted at trial because the prosecution and defense had made an agreement to that effect. The sixth argument seeks relief on the ground that the state violated an agreement to dismiss the prosecution if the defendant passed a lie detector test.
In Louisiana, the results of a polygraph test are inadmissible when offered by either party, either as substantive evidence or to demonstrate the credibility of a party or witness. State v. Titus, 358 So.2d 912 (La.1978); State v. Whitmore, 353 So.2d 1286 (La.1977).[1] Moreover, the trial court has the discretion to rule the results inadmissible even if the defense and prosecution have stipulated their admission. State v. Corbin, 285 So.2d 234 (La.1973). Here the relator has not demonstrated an abuse of this discretion.
The relator's argument that the prosecution was bound to dismiss proceedings against Fields once he passed the lie detector test has not been passed on in this jurisdiction. In State v. Clark, 284 So.2d 781 (La.1973), supervisory writs were denied on similar facts with the notation that the defense contention could be reviewed on appeal in case of conviction.[2] Dissenting to the denial, Justice Barham argued that the state should be compelled to carry out its *1023 end of the bargain once the defendant proved he had passed the test. See also, State v. Hingle, 242 La. 844, 139 So.2d 205 (1962).
Although the record reveals that the relator took and passed a polygraph test administered by Roy Jacobs, the only evidence of an agreement with the prosecution is the relator's uncorroborated hearsay testimony. Fields did not call the trial attorney to testify at the evidentiary hearings concerning the agreement's existence, and the prosecution evaded the issue by asserting that it obviously could not have entered into such an agreement since it later prosecuted Fields. In the absence of a satisfactory record we cannot decide the factual issues and will not speculate on the effect of such a bargain until it is proved.
These arguments offer no grounds for relief.
Accordingly, the ruling of the district court denying the writ of habeas corpus is affirmed.
NOTES
[*] Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] But see State v. Catanese, La., 368 So.2d 975, decided this day.
[2] The defendant was apparently acquitted since no appeal was lodged in this court.