386 So.2d 1348 (1980)
STATE of Louisiana
v.
Ronnie BROOKS.
No. 65812.
Supreme Court of Louisiana.
April 7, 1980.
Dissenting Opinion September 15, 1980.
Ann Woolhandler, Michael Collins, Paul Henry Kidd, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Tommy J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.[*]
Defendant appeals from his conviction on a charge of violation of R.S. 40:966(A)(1), distribution of a controlled dangerous substance classified in Schedule I of R.S. 40:964 (marijuana). Defendant was sentenced to pay a fine of $500 plus court costs and to serve two years at hard labor. The sentence *1349 was suspended upon the condition that defendant make full payment of the fine and costs, and defendant was placed on active probation for two years.
Defendant makes two major arguments on this appeal. One basis for the appeal is that there was evidence which was newly discovered after trial and which was not discoverable by the exercise of reasonable diligence prior to or at trial. The other basis for the appeal is that the state deliberately withheld information from the defendant when it knew that information to be favorable to the defense, and continued to refuse disclosure even following defense requests for discovery.
The evidence presented by the state against defendant consisted solely of the testimony of a Louisiana State Police officer who works undercover in narcotics. The officer, Trooper Donald Givens, stated that during February of 1978, while he was investigating drug distribution in Lincoln Parish in the area near the Grambling campus, a confidential informant set up a meeting with someone who could arrange for the officer to purchase drugs. On February 21, the informant introduced the officer to two men, one of whom Givens said he "later identified to be Allen Russell", and the other whom he called Callahan. On February 22, the informant and Russell again met with Trooper Givens and Russell subsequently led the officer to a house in which Givens purchased for $150 a one-pound package of a substance later identified as marijuana.
Trooper Givens testified that over the next several months he attempted, without success, to find out the name of the person who had sold him the marijuana. Then one day, about five or six months later, he was in the vicinity of Grambling while on surveillance in another matter and saw a man leaving a liquor store whom he recognized as the person from whom he had purchased the drugs. For the first time since the purchase of the drugs, he identified the man as the defendant in this case. After having identified himself as a police officer, he asked the man for his driver's license. No arrest was made at the time, but defendant was arrested some two weeks later.
Prior to trial, the defense had made several discovery requests of the state. The state answered that it did not have any information which would be exculpatory. The state did not give defendant the name of Allen Russell, nor did the state indicate what Russell's testimony might be were he called as a witness.
It was not until trial that there was any intimation to the defense that someone other than Givens was present when the drugs were purchased. At that time, Givens gave the name of Allen Russell as the person who had arranged for his contact with the seller. The state did not call Russell as a witness. However, in the state's brief, it is now admitted that the prosecution did know, before trial, that Allen Russell would not corroborate the officer's identification. Therefore, the state was indeed in the possession of material information favorable to the accused. That information, namely that Russell would have contradicted the state's sole eyewitness, was not revealed to the defense, despite its discovery request.
Following trial, the defense had an opportunity to interview the said Allen Russell, and, for the first time, ascertained that, not only would his testimony not corroborate the statements of Givens, but the testimony would be directly contradictory to the testimony of Givens.
The defense moved for a new trial on the basis of newly discovered evidence, C.Cr.P. art. 851.[1] A hearing was held in which *1350 Russell testified that he had never seen Givens and had not participated in the activities which Givens had described. Russell also testified that he is a cousin of defendant herein.
After hearing the testimony, the trial court denied the motion for a new trial stating as its reason that the evidence which the defense presented was discovered at the trial, not afterwards, therefore the provisions of C.Cr.P. art. 851 would not be applicable.
We believe the only evidence which was discovered at trial was the existence and identity of one whom the state's sole witness claimed arranged for and was present at the sale of the marijuana. There was nothing said at trial which would indicate that the substance of Russell's testimony would not corroborate the testimony of Trooper Givens. Thus, it was Russell's testimony which is the evidence which was not discovered until subsequent to trial. The existence and identity of a witness, without any knowledge of what that witness' testimony may be, does not in these circumstances constitute evidence discovered at the time of trial.
We also find there is another sound basis for granting a new trial. The refusal of the state to turn over such information in a case of this nature, presenting a one-on-one witness conflict, falls squarely within the constitutional proscription of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and U. S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Therefore, this case is directly analogous to those cases holding that witnesses' information which might cast doubt on the specific testimony or general reliability of the prosecution's sole eyewitness is information which is "material" for the purposes of Brady-Agurs. For Louisiana jurisprudence discussing and applying the Brady-Agurs principles, see State v. Falkins, 356 So.2d 415 (La.1978); State v. Bailey, 367 So.2d 368 (La.1979). For a discussion of the principles see State ex rel. Fields v. Maggio, 368 So.2d 1016 (La.1979) and State v. Talbot (La. 1980), No. 62,832.
Moreover, these due process limitations are applicable not only where the prosecution has an actual "statement" in its files favorable to the accused, but also where the prosecution is aware of the existence of a witness who would testify favorably to the accused. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); United States v. Gleason, 265 F.Supp. 880 (S.D.N.Y. 1967).
The state rationalizes the failure of its obligation to disclose by stating that, even though it knew that Russell might testify in the accused's behalf, it refused to let him do so on the theory that if he did not corroborate the state's eyewitness, he would just be "perjuring" himself. We do not regard it to be the role of the prosecution to usurp the acknowledged functions of judge and jury in determining the truthfulness of witnesses. The state's determination that someone would not make a good witness for the prosecution because he seemed inclined to testify for the defense is one thing, but it is quite another for the state to fail to turn over such information to the defense pursuant to a Brady request. The state repeatedly suggests that since Russell was a cousin of defendant, the defendant must have known in advance of trial that Russell might have testified in his behalf. However, there is no evidence that the defendant was aware, prior to trial, either that the state thought Russell was an eyewitness, or more significantly, that Russell had already disclosed his willingness to the state not to corroborate the prosecution's witness. The state cannot escape its disclosure obligations by proffering the excuse that it thought the accused already knew what it *1351 failed to disclose. Moreover, there can be no doubt that the prosecution was well aware in advance of trial that Russell would testify as he ultimately did (i. e. in behalf of the defendant), since it admitted that to put Russell on the stand would amount to perjury. Obviously, at least from the state's point of view, this meant that Russell was known to them to be prepared to testify for the defense. The prosecution would surely not be contending that Russell would have "perjured" himself had he testified for the state. The meaning of the admission is clear: the state knew that Russell would contradict its sole eyewitness, and then it refused to disclose the fact to the defendant in the face of discovery requests, or even at trial when his name was "unexpectedly" revealed by the prosecution's witness.
The Brady rules of disclosure apply not just to information favorable to the accused which the state itself believes to be credible, but to any material information that is favorable to the accused. The possible absence of bad faith in the state's failure to produce is no defense. Brady, supra, 373 U.S. at 87, 83 S.Ct. at 1196. If the prosecution could, under the aegis of Brady, disclose only what information favorable to the accused which it found to be believable, then the doctrine would become meaningless. Gleason, supra.
For the reasons assigned, this case should be remanded for a new trial.
REVERSED AND REMANDED.
DENNIS, J., dissents with reason.
DENNIS, Justice, dissenting.
I would affirm the conviction. In my opinion the record in this case does not reflect that the existence of the witness was unknown to the defense until after the trial. Therefore, this favorable evidence is neither "new evidence" for purposes of granting a new trial, nor violative of Brady or Agurs, which involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342, 347.
NOTES
[*] Chief Judge Paul B. Landry, Jr., Retired, participated in this decision as Associate Justice Ad Hoc.
[1] "Art. 851. Grounds for new trial. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

"The court, on motion of the defendant, shall grant a new trial whenever: (1) The verdict is contrary to the law and evidence; (2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error; (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; (4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."