326 So.2d 815 (1976)
STATE of Louisiana
v.
James WILLIAMS.
No. 56523.
Supreme Court of Louisiana.
January 19, 1976.
*816 Bernard E. Fulghum, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By bill of information the District Attorney for Orleans Parish charged James Williams, Alvin Ford and Robert Harris with theft of an automobile having a value of $425. Ford and Harris pled guilty. Williams was tried, found guilty as charged and sentenced to serve two years at hard labor in the custody of the Department of Corrections.
Ten days later Williams was charged as a multiple offender. Upon a showing by the State that defendant had three prior felony convictions, his two-year sentence was vacated and he was sentenced as a multiple offender to 25 years at hard labor in the custody of the Department of Corrections.
On this appeal Williams assigns four errors upon which he relies to set aside his conviction and sentence.

Assignment No. 1
Officer Charles Matt testified on behalf of the State that on September 10, 1974, around 6:15 in the morning, he and his partner received a complaint over the police radio that three people were stripping a vehicle in the rear of the Pecan Grove Apartments. They proceeded to the location and stopped a distance away in an inconspicuous location to observe the activity. After obtaining a good description of the participants, they approached Williams, Ford and Harris.
*817 As they drew near, Ford was carrying a tire he had removed from the vehicle into a wooded area behind the apartment, and Harris was in the process of removing the car's battery. When the officers reached the vehicle, Officer Matt asked Williams what he was doing by the car and, according to the officer, Williams said "he was fixing it; it was his friend's car."
The officers obtained the car's license number, checked and ascertained that the owner was Mae Hill. She was contacted by another officer who learned from her that she believed her car was in front of her house, and she had given no one permission to use it. When told it was not there, she said it had apparently been stolen overnight.
Prior to Officer Matt's testimony concerning his conversation with Williams, anticipating that the officer may testify to Williams' conversation, defense counsel objected to "any statements of any matter that may or may not be considered incriminating against the defendant, at this time, by this officer, as there is no advance notification prior to trial." The Assistant District Attorney readily admitted that, although he intended to do so, he had inadvertently failed to notify the defense that an inculpatory statement would be used as required by Article 768 of the Code of Criminal Procedure. His good faith in this regard is not questioned. The defense objection was overruled by the trial judge, and the ruling was objected to by defense counsel. This assignment of error is based upon that objection.
Williams' statement is treated in brief by the defense as inculpatory. He argues that Article 768 requires the State to advise the defendant in writing prior to beginning its opening statement, if it intends to introduce a confession or inculpatory statement in evidence, otherwise the inculpatory statement is inadmissible. He concedes, however, that the requirement of Article 768 is qualified by Article 769 of the Code. Under the terms of Article 769 an inadvertent and good faith omission to mention evidence in the State's opening statement does not require its rejection if the defendant was not taken by surprise. By the decision in State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970), this court held that a good faith technical violation of Article 768 will only result in rejecting the State's evidence when the noncompliance has been prejudicial to the defendant.
Further, defense counsel claims that the defense was taken by surprise by the admission of Williams' statement. This claim of prejudice is not substantiated, however, and therefore does not warrant reversal. See also State v. Coates, 273 So.2d 282 (La.1973).
In his per curiam to this assignment of error, the trial judge stated that he admitted the statement into evidence because the failure to give the notice required by Article 768 was, in his judgment, an honest oversight on the part of the District Attorney, and no prejudice was demonstrated by the defendant.
Aside from these considerations, we cannot view Williams' statement to Officer Matt that he was fixing his friend's car as an inculpatory statement as the term has been understood in this Court. In State v. Fink, 225 La. 385, 231 So.2d 360 (1970), an inculpatory statement was defined as follows: "As used in Article 768, the terminculpatory statement refers to the out-ofcourt admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events."
The facts of this case indicate that the transaction involving the theft of the vehicle was in progress at the time the statement was made. The tires and battery were in the process of being removed. It may be that the vehicle had been removed from the owner's premises a short while before, but, at least insofar as Williams and his companions were concerned, the caper was not complete. Williams' statement, was not made after the fact of *818 the theft but was made while the theft was in progress. The statement did not relate to past events. It was in fact a declaration incident to the illegal transaction, uttered while it happened. The statement was an impulsive and spontaneous reply of a participant and as such is admissible as res gestae. La.R.S. 15:447-48; State v. Wells, 306 So.2d 695 (La.1975).

Assignment No. 2
Defendant moved for a jury trial on the bill of information charging him as a multiple offender; it was denied by the trial judge. La.R.S. 15:529.1. The motion is based upon the defense contention that Article I, Section 17, of the Constitution of 1974 unconditionally grants a jury trial to this defendant in criminal cases. The constitutional guarantee referred to provides:
"A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, five of whom must concur to render a verdict. The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury."
The enhanced penalty under the habitual offender statute is not intended to be gauged by a numerical count of the offender's crimes, but is imposed because of his successive failures to obey the law. The punishment is for the new crime only, but it is more severe if the defendant is an habitual offender.
In the multiple offense proceeding, the defendant's guilt is not at issue, and the standard is not "beyond a reasonable doubt" as in the classic criminal trial. By the words of the statute "If the judge finds that he has been convicted of a prior felony . . . the court shall sentence him . . . ." La.R.S. 15:529.1 D. This reference to the judge plainly excludes a jury trial. We have held that a defendant in a multiple offender proceeding is not entitled to a jury trial. State v. Vale, 252 La. 1056, 215 So.2d 811 (1968), reversed on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409; State v. Guidry, 169 La. 215, 124 So. 832 (1929); State v. Peace, 163 La. 121, 111 So. 621 (1927).
These principles in effect at the time of its adoption make it clear to us that the new constitution refers to "criminal cases" in the sense of a case where the defendant's guilt or innocence is at issue, a case in which a jury traditionally has a role. The new constitution adds nothing to the old which demands a change in the view this Court has held over the years. A defendant in an enhanced penalty proceeding is still not entitled to a jury trial.[1] It should be added, also, that at the hearing on the charge of multiple offenses, *819 the defendant admitted his commission and conviction of the prior offenses upon which the enhanced penalty is based.

Assignment No. 3
A motion to quash the multiple offender charges was filed by defense counsel contending: 1) the prosecution (proceeding) should have been instituted by grand jury indictment; 2) after sentence on the guilty verdict the trial court lost jurisdiction and the power to vacate that sentence no longer existed; and 3) the enhanced penalty is cruel and unusual punishment.
1) The defense relies upon the mandate of the Constitution of 1974 which ordains that "Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury." La.Const. art. I, § 15 (1974).
It is the defense contention that defendant, as a quadruple offender, faced a maximum punishment of life imprisonment and, therefore, the constitution mandates that the multiple offender charge could only be instituted by the grand jury.
In addition to the clear legislation permitting multiple offender charges to be filed by the district attorney in a bill of information, La.R.S. 15:529.1 D, we are again convinced, as we were in our consideration of Article I, Section 17, in connection with Assignment of Error No. 2, that the constitution has made no change in the law dealing with multiple offenders. Article I, Section 15, does not require a grand jury indictment to institute a multiple offender hearing. As we have pointed out, an enhanced penalty proceeding is not a prosecution for a crime requiring a grand jury indictment. As a matter of fact, multiple offender charges are not prosecutions for crimes; the charges only involve enhanced penalties on account of crimes for which the defendant has previously been convicted. Multiple offender proceedings do not, therefore, fall within the contemplation of the constitutional reference to prosecution for a "capital crime or a crime punishable by life imprisonment."
2) In contending that the trial court lost jurisdiction after imposing the two-year sentence, and, for that reason, was without authority to impose an enhanced penalty, defense counsel seeks to distinguish this case, where the enhanced penalty sentence was imposed after the two-year sentence, from the decision in State v. Kennedy, 255 La. 295, 230 So.2d 818 (1970), where the multiple offender proceeding was held to be properly instituted after conviction but before sentencing.
To support this argument counsel contends that the multiple offender statute, La.R.S. 15:529.1 D, is in conflict with Article 881 of the Code of Criminal Procedure. Under the authority of the former, a bill charging the defendant as a multiple offender may be filed at any time after conviction or sentencing, and the judge is given the power to vacate his previous sentence; whereas, Article 881 of the Code of Criminal Procedure grants authority to amend or change the sentence only "prior to the beginning of execution of the sentence."
The enhanced penalty statute seeks solely to regulate the multiple offender proceeding, while Article 881 applies to convictions for crimes generally. These statutes prescribe different procedures for different fact situations. The multiple offender statute establishes what may be referred to as an exception to the general rule announced in Article 881. There is no conflict between these statutes. There is no merit to this contention.
3) The claim that the enhanced penalty is cruel and unusual punishment has no merit. Recidivist statutes have been upheld on many occasions against the attack that they involve cruel and unusual punishment. Price v. Allgood, 369 F.2d 376 (5th Cir. 1966), cert. denied, 386 U.S. *820 998, 87 S.Ct. 1321, 18 L.Ed.2d 349; State v. Vale, 252 La. 1056, 215 So.2d 811, reversed on other grounds, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1968).

Assignment No. 4
This assignment asserts that defendant was erroneously convicted as a fourth offender. The argument is that by Article IV, Section 5(E)(1), of the Constitution of 1974 [2] defendant was automatically pardoned for his first offense conviction because he was "never previously convicted of a felony." By this constitutional pardon, he argues, the pardoned conviction could not be counted in calculating his multiple offenses. He should only be punished as a triple offender, he argues.
Although we have held that offenses pardoned by the Governor cannot be counted as a multiple offense, State v. Childers, 197 La. 715, 2 So.2d 189 (1941); State v. Lee, 171 La. 744, 132 So. 219 (1931); the principle does not apply here. This defendant cannot claim the benefit of an automatic pardon under the Constitution of 1974. His first offense was a 1963 plea of guilty to simple burglary, and Article XIV, Section 23, of the Constitution provides that "All . . . criminal liabilities. . . judgments, sentences, orders, decrees. . . existing on the effective date of this constitution shall continue unaffected." Section 26 of Article XIV reads:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
When these sections are considered in conjunction with the automatic pardon provision of Article IV, Section 5, it becomes apparent that the automatic pardon was to be granted prospectively. We do not believe the drafters of the constitution intended that all enhanced penalties prior to midnight, December 31, 1974, the effective date of the new constitution, were to be upset on the basis of an automatic, retroactive pardon of all first offenses.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.Const. art. VII § 41 (1921);

"The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases; . . . All cases in which the punishment may not be at hard labor shall, until otherwise provided by law, be tried by the judge without a jury. Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict."
[2] La.Const. art. IV, § 5(E)(1) (1974), provides in pertinent part:

" . . . However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor."