STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 08-752


STATE OF LOUISIANA

VERSUS

MELVIN TASSIN


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 117533
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Billy Howard Ezell, Judges.


**AFFIRMED.**


**Michael Harson**
**District Attorney, Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**Melvin Tassin**

**Allan P. Haney**
**Fifteenth Judicial District Court, Assistant District Attorney**
**P. O. Box 4308**
**Lafayette, LA 70502**
**(337) 291-7009**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE**

The State filed a bill of information under the Habitual Offender Law, La.R.S. 15:529.1, on October 15, 2007, alleging the Defendant, Melvin Taussin, was a third felony offender. An amended bill of information alleging the Defendant was a fourth felony offender was filed on March 10, 2008.

On March 10, 2008, the trial court explained the consequences of the habitual offender bill to the Defendant. After a hearing held on May 5, 2008, the Defendant was adjudicated a fourth felony offender and sentenced to serve twenty years at hard labor without benefit of probation or suspension of sentence.

A "Motion and Notice of Appeal" was filed on May 8, 2008. The Defendant is now before this court asserting the following five assignments of error:

> 1) The State improperly instituted the habitual offender proceedings against Melvin Tassin; it improperly tried him before the court without a proper waiver of the right to trial by jury and it offered insufficient documentation of the predicate offenses.
>
> 2) The State failed to present sufficient evidence to prove that Melvin Tassin was the person who had been convicted of the prior offenses.
>
> 3) The State's arbitrary choice to seek the imposition of the enhanced penalties set forth in La.R.S. 15:529.1 against Melvin Tassin amounted to prosecutorial misconduct.
>
> 4) The trial court erred in not deviating below the statutorily mandated minimum sentence set forth in the habitual offender law.
>
> 5) In the event the court finds any of the issues were not specifically preserved, it is submitted that counsel acted ineffectively in not properly presenting the issues to the trial court and in not obtaining a specific ruling from the trial court. Further, the trial court erred in not specifically ruling on the issues raised within the Response/Objection/Motion to Quash and Denial of Habitual Offender Bill of Information.

## FACTS

The Defendant was convicted of simple burglary and sentenced to eight years at hard labor. Subsequently, a bill of information charging the Defendant as a fourth felony offender was filed by the State. After a hearing, the Defendant was adjudicated a fourth felony offender. His sentence of eight years at hard labor was vacated, and he was then sentenced to serve twenty years at hard labor to be served without benefit of probation or suspension of sentence.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the Defendant contends the State improperly instituted the habitual offender proceedings against him; that it improperly tried him before the court without a proper waiver of the right to trial by jury; and that it offered insufficient documentation of the predicate offenses.

### Grand Jury

The Defendant argues that he was subjected to a possible life sentence; therefore, the habitual offender proceedings should have been instituted by the filing of an indictment returned by a grand jury. The Defendant further alleges that to the extent La.R.S. 15:529.1 allowed the district attorney to subject him to a possible life sentence by multiple bill of information, it is in conflict with the Constitution and that portion of the statute should be declared unconstitutional. The Defendant admits that he did not make an objection to the lack of indictment in the trial court; however, he asserts the error at issue is jurisdictional and must be considered by this court.

In support of his argument that the error he complains of is jurisdictional, the Defendant cites *State v. Donahue*, 355 So.2d 247 (La.1978), wherein the Louisiana Supreme Court found that a prosecution for second-degree murder which was brought by bill of information rather than by a grand jury indictment was null. In footnote

2

three of its opinion in *Donahue*, the supreme court found the error was jurisdictional and could be raised at any time.

The Defendant notes that in *State v. Alexander*, 325 So.2d 777 (La.1976), the Louisiana Supreme Court reached the opposite conclusion and stated that La.Code Crim.P. art. 382 and La.Const. art. 1, § 15 were not intended to and did not apply to the institution of enhanced penalty proceedings.[1] The court further noted that initiation of prosecution by information or grand jury indictment is determined by the legislative penalty provided by the enactment defining the crime and providing for its punishment.

We will address the issues presented by the Defendant in brief to this court rather than determine whether failure to institute habitual offender proceedings by grand jury indictment is a jurisdictional error.

In *State v. Colton*, 07-252 (La.App. 3 Cir. 10/31/07), 968 So.2d 1239, *writ denied*, 07-2296 (La. 4/25/08), 978 So.2d 364, the defendant argued that his habitual offender sentence was unconstitutional because he received a life sentence and the habitual offender proceedings were not instituted by a grand jury. This court denied the defendant's claim, stating the following:

> As the State observes in its brief, Defendant failed to make this objection at trial. Therefore, he may not raise it for the first time on appellate review. "Constitutional issues are no exception." *State v. Williams*, 02-1030, p. 7 (La.10/15/02), 830 So.2d 984, 988. The *Williams* case included challenges to the constitutionality of a particular evidentiary statute which the supreme court declined to address.
>
> Additionally, the assignment lacks substantive merit. The Louisiana Constitution does not require a grand jury indictment for habitual offender proceedings. *State v. Jolla*, 337 So.2d 197 (La.1976); *State v. Maduell*, 326 So.2d 820 (La.1976); and *State v. Williams*, 326 So.2d 815 (La.1976).

---

[1] Louisiana Constitution Article 1, § 15 and La.Code Crim.P. art. 382 provide for the institution of prosecution in crimes punishable by life imprisonment by grand jury indictment.

*Id*. at 1241.

In *State v. Mickel*, 07-47 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, *writ denied*, 07-1422 (La. 1/7/08), 973 So.2d 732, the defendant argued that habitual offender proceedings in his case were invalid because neither the underlying offense of armed robbery nor the subsequent habitual offender allegation was charged by grand jury indictment.

The court discussed the issue as follows:

> Our Supreme Court in *State v. Alexander*, 325 So.2d 777, 778-779 (La.1976) has made it clear that the constitutional requirement of a grand jury indictment in capital cases or cases punishable by life imprisonment does not apply to the institution of enhanced-penalty proceedings under La. R.S. 15:529.1. *Id*. The grand jury's function is to inquire into an offense and to indict for an offense if the evidence so indicates. *Id*. at 779. The *Alexander* court explained that the classification of felonies for initiation of prosecution is "founded upon the general penalty applicable to the substantive crime charged . . . not upon any enhanced penalty to which any particular individual might be subject because of his prior convictions". . .Post-conviction enhanced-penalty proceedings have no functional relationship to the innocence or guilt of the crime for which prosecution is initiated either by grand jury indictment or by information. *Id*.

> This court has previously considered a defense argument that the State should have re-instituted proceedings against a defendant by Grand Jury Indictment in *State v. Collins*, 44-1443 (La.App. 5 Cir. 7/26/05), 910 So.2d 454. In rejecting the defendant's argument that a grand jury indictment was required, this court followed the law in *State v. Alexander*, supra, stating;

>> The jurisprudence is clear that the classification of felonies for initiation of prosecution is based on the penalty applicable to the substantive crime and not the enhanced penalty to which a defendant might be subjected. In the present case, defendant was charged with armed robbery and first degree robbery, neither of which requires a life sentence. La. R.S.14:64 and 14:64.1. Therefore, initiation of prosecution is either by indictment or by bill of information. *State v. Collins*, 910 So.2d at 463-464[.]

> The defendant argues this court should reconsider *State v. Alexander*, which is a Louisiana Supreme Court decision, due to more recent jurisprudence, including *U.S. v. Booker*, 543 U.S. 220, 238, 125 S.Ct. 738, 752, 160 L.Ed.2d 621 (2005) which noted "[t]he Framers

4

would not have thought it too much to demand that, before depriving a man of [ten] more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbours,' rather than a lone employee of the State." (citing *Blakely v. Washington*, 542 U.S. 296, 313-314, 124 S.Ct. 2531, 2543, 159 L.Ed.2d 403 (2004)).

Defendant contends this Court should reconsider whether the true intent of the legislature was to require a grand jury decision on cases in which a defendant might be punishable by death or life imprisonment, noting that the constitution is clear that a single district attorney or his assistant should not be making this decision alone. He argues to the extent that La. R.S. 15:529.1 allows the district attorney to subject a defendant to a life sentence by multiple offender bill of information, it is in conflict with the constitution and that portion of the statute should be declared unconstitutional.

*Id*. at 525-26 (alteration in third paragraph added).

The court went on to find that the constitutionality of La.R.S. 15:529.1 was not properly before the court. The court further stated that *Alexander*, 325 So.2d 777, and *Collins*, 910 So.2d 454, were controlling and found no merit in the defendant's assignment of error.

In *State v. Smith*, 05-375 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, *writ denied*, 07-811 (La. 1/11/08), 972 So.2d 1159, the defendant argued that the State should have sought a grand jury indictment on the issue of the habitual offender bill, as he could have been sentenced to life imprisonment as a quadruple offender under the habitual offender bill. The court concluded that La.Const. art. 1, § 15 and La.Code Crim.P. art. 382 applied only to substantive offenses, not to habitual offender proceedings and cited *State v. Jolla*, 337 So.2d 197 (La.1976); *Alexander*, 325 So.2d 777; and *State v. Delandro*, 01-2514 (La.App. 1 Cir. 5/10/02), 818 So.2d 1011. The court further noted the defendant did not receive life imprisonment, but was sentenced to thirty years at hard labor as a quadruple offender. *See also State v. Wilson*, 06-1421 (La.App. 4 Cir. 3/28/07), 956 So.2d 41; *State v. Jackson*, 05-1281

5

(La.App. 4 Cir. 11/29/06), 947 So.2d 115, *writ denied*, 07-24 (La. 9/14/07), 963 So.2d 996.

In *Delandro*, 818 So.2d 1011, the court concluded that the defendant could be charged with distribution of cocaine by bill of information, rather than indictment, although the defendant asserted that a conviction on that charge, as a third felony, would subject him to life imprisonment. The court further concluded that the requirement of indictment for offenses subject to a life sentence applied to charged offenses only, not to the enhancement of a penalty based on prior convictions.

In *State v. Overton*, 337 So.2d 1201 (La.1976), the defendant argued that because a prison term of one hundred ninety-eight years was the equivalent of life imprisonment, prosecution should have been initiated by grand jury indictment under La.Const. art. 1, § 15. The Louisiana Supreme Court concluded that habitual offender proceedings were not prosecutions for crimes but enhanced penalty proceedings for previous convictions and, consequently, did not fall within the cited constitutional provision.

The Defendant in the case at bar makes arguments identical to those made by the defendant in *Mickel*, 961 So.2d 516. Those arguments include a request that this court reconsider the Louisiana Supreme Court's ruling in *Alexander*, 325 So.2d 777, in light of the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). The Defendant argues that decisions to institute habitual offender proceedings in cases involving the possibility of life imprisonment should not be left to the decision of the district attorney alone. Furthermore, to the extent La.R.S. 15:529.1 allowed the district attorney to subject him to a mandatory life sentence by the filing of a bill of information alleging he was an habitual

6

offender, it is in conflict with the Constitution and that portion of the statute should be declared unconstitutional.[2]

The Defendant also makes arguments not discussed by the court in *Mickel*, 961 So.2d 516. The Defendant argues that part of the Louisiana Supreme Court's ruling in *Alexander*, 325 So.2d 777, directly conflicts with subsequent rulings by the court. The Defendant asserts that in *Alexander*, the Louisiana Supreme Court found that an habitual offender's sentence is "because of his prior conviction" and not the present charge.[3] Thus, an indictment was not required. However, in other cases, to avoid double jeopardy challenges, the Louisiana Supreme Court has said that multiple offender sentences are because of the present conviction, not the prior convictions of record. In support of this argument, the Defendant cites *State v. Dorthey*, 623 So.2d 1276 (La.1993); *State v. Johnson*, 432 So.2d 815 (La.1983); *State v. Hill*, 340 So.2d 309 (La.1976); *State v. Jackson*, 332 So.2d 755 (La.1976); and *State v. Wooten*, 136 La. 560, 67 So. 366 (1915).

The Defendant next argues that failure to comply with statutory due process before increasing a maximum sentence of twelve years to a possible life sentence without benefit of probation or suspension of sentence is plain, clear, and constitutional error. The Defendant asserts he was provided minimal due process rights and noncompliance with statutory due process is reversible error. The

---

[2]In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Supreme Court ruled that a sentence was unconstitutional where the trial judge based that sentence, which exceeded the term allowed under Washington's Sentencing Reform Act, in part, on factors not heard by the jury. In *Booker*, 543 U.S. 220, the Supreme Court found that the Sixth Amendment, as construed in *Blakely*, applied to the Federal Sentencing Guidelines.

[3]In *Alexander*, 325 So.2d 777, the Louisiana Supreme Court actually stated the following: "A proceeding to enhance the penalty of a convicted defendant because of prior convictions does not charge him with a crime; it is merely a method of increasing the punishment for second and subsequent offenders." *Id.* at 779.

7

Defendant then attempts to distinguish the case at bar from existing jurisprudence. The Defendant asserts that *Delandro*, 818 So.2d 1011, is distinguishable in that Delandro did not have standing to raise the issue before the first circuit. Additionally, he was not adjudicated an habitual offender. The Defendant further asserts that *Overton*, 337 So.2d 1201, is inapplicable to the case at bar and distinguishable because Overton was not subject to life imprisonment and the case was decided prior to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), and *Booker*, 543 U.S. 220.[4]

The Defendant asserts that when presented with similar issues after the United States Supreme Court's decision in *Booker*, 543 U.S. 220, the Louisiana appellate courts have relied on *Alexander*, 325 So.2d 777, as the basis for the denial of defendants' constitutional claims. The Defendant notes that in *Smith*, 913 So.2d 836, the fourth circuit followed the Louisiana Supreme Court's decision in *Alexander*, 325 So.2d 777, but the defendant did not receive a life sentence. The Defendant contends the fourth circuit did not address what effect the decision in *Booker*, 543 U.S. 220, had on *Alexander*, 325 So.2d 777. We note the fourth circuit's opinion does not reference the decision in *Booker*, 543 U.S. 220, and we are not aware if that issue was raised in brief to the fourth circuit.

The Defendant asserts the fifth circuit addressed the issue in *Mickel*, 961 So.2d 516. However, although the court set forth the defendant's argument, it relied on *Alexander*, 325 So.2d 777, and found that decision still controlling without discussion of the impact jurisprudence from the United States Supreme Court may have had on *Alexander*.

---

[4]In *Apprendi*, 530 U.S. 466, the United States Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

*Booker*, 543 U.S. 220, involved a departure from the sentencing range set out by the Federal Sentencing Guidelines and not a recidivism statute. We follow our decision in *Colton*, 968 So.2d 1239, wherein it was decided that the Louisiana Constitution does not require a grand jury indictment for habitual offender proceedings, and the other cases cited herein. Accordingly, the Defendant's claim that habitual offender proceedings should have been instituted by indictment lacks merit.

**Jury Trial**

The Defendant contends, pursuant to *Apprendi*, 530 U.S. 466, and *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005), the habitual offender proceedings should have been heard by a jury. The Defendant asserts that in *Shepard*, the United States Supreme Court held that any external materials or issues that do not appear on the face of certified court documents or were not admitted, must be decided by a jury or proven beyond a reasonable doubt if they are relied on to increase a sentence.[5]

The Defendant asserts that based on *Apprendi*, 530 U.S. 466, and its progeny, *Shepard*, 544 U.S. 13, *Blakely*, 542 U.S. 296, and *Booker*, 543 U.S. 220, La.R.S. 15:529.1 is incompatible with the Sixth Amendment requirement of a jury trial for all elements, except the existence of a prior conviction, which is specifically exempted. The Defendant further asserts that the term "sentence enhancement" in *Apprendi*, 530 U.S. 466, is the functional equivalent of an element of a greater offense than the one

---

[5]In *Shepard*, the Supreme Court held that enquiry under the Armed Career Criminal Act (ACCA) to determine whether a guilty plea to burglary under a nongeneric statute necessarily admitted elements of the generic offense was limited to the terms of the charging document, to the terms of a plea agreement or transcript of colloquy between the judge and the defendant in which the defendant confirmed the factual basis for the plea, or to some comparable judicial record of this information. Thus, the federal trial court could not consider police reports or complaint applications in determining whether prior state court convictions were violent felonies within the meaning of the ACCA.

covered by the jury's guilty verdict and fits squarely within the definition of an "element of the offense" as used in *Apprendi*. Thus, due process and the Sixth Amendment require that where there are elements beyond the existence of a prior conviction in an enhancement statute, the case must be tried to a jury on proof beyond a reasonable doubt. The Defendant asserts this Sixth Amendment violation is plain error and does not require an objection in the lower court. The Defendant asserts the constitutionality of La.R.S. 15:529.1 was raised in the trial court, but was not specifically addressed by the trial court. The Defendant further asserts that even if this court chooses not to decide the constitutionality of La.R.S. 15:529.1, the issue is still reviewable under the case law.

The Defendant goes on to assert that the United States Supreme Court's ruling in *Almendarez-Torres v. United States*, 523 U.S. 244, 118 S.Ct. 1219 (1998), has been eroded by its decision in *Shepard*, 544 U.S. 13. In *Almendarez-Torres*, 523 U.S. 244, the defendant was convicted of illegally reentering the United States after having been previously deported following his conviction for aggravated felonies. The Supreme Court held that the statutory subsection authorizing a sentence of up to twenty years for any alien who illegally returned to the United States after having been previously deported following conviction for an aggravated felony was a mere penalty provision and did not serve to define a separate immigration-related offense. Additionally, Congress's decision to treat recidivism, and in particular the fact that an alien is deported following his conviction for an aggravated felony, merely as a sentencing factor upon the alien's subsequent conviction of illegal reentry, rather than as an element of that offense, did not exceed due process or other constitutional limits on Congress's power to define the elements of a crime.

10

The Defendant has asserted that failure to have the habitual offender proceedings heard by a jury is plain error and does not require an objection. As previously mentioned, in *Colton*, 968 So.2d 1239, this court noted the defendant did not object to the State's failure to institute habitual offender proceedings by grand jury and went on to address the merits of the defendant's claim. Accordingly, we will address the issues asserted by the Defendant rather than determine if the failure to have the jury hear the habitual offender proceedings was plain error requiring no objection or if the issues were preserved by the Defendant's filing of a "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information."

In *State v. Washington*, 05-1006 (La.App. 4 Cir. 5/10/06), 931 So.2d 1120, *writ denied*, 06-1483 (La. 12/15/06), 944 So.2d 1272, *cert. denied*, __ U.S. __, 127 S.Ct. 2115 (2007), the defendant argued that "his habitual offender sentence in excess of the five-year maximum violated his right to a jury" trial because the enhancement was based on a finding of fact made by the judge and not the jury. *Id*. at 1124. The fourth circuit found that *Apprendi*, 530 U.S. 466, specifically exempted prior convictions from those factors which must be tried to a jury to increase a penalty beyond the statutory maximum for the substantive offense. Thus, Louisiana's scheme permitting habitual offender proceedings to be heard before a judge alone did not violate the Due Process Clause.

The fourth circuit noted that the Supreme Court in *Apprendi* relied on *Almendarez-Torres,* 523 U.S. 224. On appeal, the defendant pointed out that the Supreme Court in *Apprendi*, 530 U.S. 466, 489-90, stated, "[I]t is arguable that *Almendarez-Torres* was incorrectly decided." *Apprendi*, 530 U.S. at 489-90. The defendant then argued that as the actual overruling of *Almendarez-Torres*, 523 U.S.

11

224, was both certain and imminent, the practical effect was that the fourth circuit should hold that his habitual offender sentence violated his Sixth Amendment rights. The fourth circuit held that until *Almendarez-Torres* and its progeny were overruled, the Supreme Court's holdings were binding on the court and the defendant's claim lacked merit.

In *Colton*, 968 So.2d 1239, the defendant argued that the habitual offender proceedings were unconstitutional because it caused his sentence to be enhanced based upon factual determinations made by the judge, rather than a jury. In support of his argument, the defendant cited *Blakely*, 542 U.S. 296, and *Booker*, 543 U.S. 228, for the proposition that facts used to enhance a sentence should be found by the jury, rather than the judge. This court then ruled as follows: _____

> [T]he Supreme Court has excepted the existence of prior convictions from this requirement. *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
>
> As recently as April 18, 2007, in *James v. United States*, __ U.S. ___, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), the Supreme Court indicated, albeit in its eighth footnote, that the prior convictions exception remains extant.

*Colton*, 968 So.2d at 1242.

In *State v. Gauthier*, 07-743 (La.App. 4 Cir. 3/12/08), 978 So.2d 1161, the fourth circuit held there was no constitutional right to a jury trial in habitual offender proceedings. The court cited *Smith*, 913 So.2d 836, in support of its ruling.

In *Smith*, 913 So.2d 836, 839-40, (alterations in original)(bold emphasis added) the fourth circuit discussed this issue as follows:

> The defendant also argues that he was entitled to a jury trial on the issue of his multiple offender status. He suggests that the multiple offender statute violates the Fourteenth and the Sixth Amendments to the U.S. Constitution because the statute allows a sentence to be increased beyond the statutory maximum without requiring the fact of the prior convictions to be submitted to the jury and proved beyond a

12

reasonable doubt. The defendant relies upon the recent United States Supreme Court case of *Shepard v. U.S.*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), in which the Court held that a sentencing court cannot look to police reports in making "generic burglary" decisions under the Armed Career Criminal Act. In its opinion, the Court noted that the issue raised

> The concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of a state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* [*v. U.S.*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ] clearly authorizes a **judge** to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality, see *Jones*, *supra*, at 239, 119 S.Ct. 1215, therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor*[ *v. U.S.*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ] constrained judicial findings about the generic implication of a jury's verdict.

> We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Shepard*, 125 S.Ct. at 1262-1263.

The defendant contends that **. . .** *Shepard*, along with *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that there be a jury trial on the issues of identity, ten year lapse, whether the predicate offenses occurred before the present offense, and whether the predicate offense fit the enumerated aggravating convictions. In *Apprendi*, the U.S. Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435. This rule was recently reiterated by the U.S. Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403

(2004) and *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The United States Supreme Court clearly made an exception for prior convictions. Thus, under *Apprendi* the defendant's prior convictions were not required to be submitted to a jury. In addition, all the issues raised by the defendant concerning the predicate offenses can be determined by reviewing the documents submitted in support of the multiple bill of information. Defendant's argument is without merit.

See also *State v. Dozier*, 06-621 (La.App. 4 Cir. 12/20/06), 949 So.2d 502, *writ denied*, 07-140 (La. 9/28/07), *Wilson*, 956 So.2d 41; 964 So.2d 350; *State v. Dunbar*, 06-1030 (La.App. 4 Cir. 3/19/08), 981 So.2d 51.

Based on *Colton*, 968 So.2d 1239, and the decisions rendered by the fourth circuit, we find the Defendant's assertion that a jury should have determined whether he was an habitual offender lacks merit.

## Records of Predicate Offenses

The Defendant asserts that the court minutes of the predicate offenses did not sufficiently establish that he was advised of and waived all of his *Miranda* rights.

In brief to this court, the Defendant asserts that in a "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information" filed on May 1, 2008, he raised several issues including the insufficiency of the documents submitted by the State to prove he was sufficiently advised of and waived his rights. The Defendant specifically asserts the minutes of court for the predicate offenses did not sufficiently establish that he was advised of and waived his *Miranda* rights.[6]

The Defendant asserts that at the habitual offender hearing defense counsel objected to the predicate offenses and the introduction of records that were used to prepare the pre-sentence investigation report. The Defendant further asserts that

---

[6]We note that a defendant is informed of his *Miranda* rights at the time of arrest and not during a plea of guilty.

14

because defense counsel objected to the sufficiency of the predicate offenses and filed a written objection, this issue is preserved for review.

The Defendant also asserts that the minute entries of the predicate offenses were deficient. He contends that although they say the court discussed his education and other information, they do not contain his responses. Additionally, the minutes fail to indicate whether the court found the information sufficient to show the Defendant's ability to understand the proceedings, whether he could read and write the English language, whether he was under the influence of any drug, whether he was promised anything in return for his plea, or whether he was threatened in any way. The Defendant further asserts that the minutes of court for trial docket number 06-05-0684 do not indicate the court advised him that the sentence could be used for enhancement purposes. The Defendant further argues that the court minutes are not a contemporaneous record showing he was informed of his *Boykin* rights.

Lastly, the Defendant argues that the evidence presented by the State was not a "perfect record" and the State did not meet its burden of proof with regard to the predicate offenses.

In his "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information" the Defendant alleged, in pertinent part, that he could not be:

> [I]dentified as the same defendant in the present pending matter in that no colloquy with the court has been presented, no fingerprint or other positive identification has been presented by certified copy of the bills of information alleged; and that the "pen pack" provided is defective in that there is no "perfect record" indicating that this defendant is indeed the one and the same alleged in the prior convictions[.]

The Defendant further claimed that the petition should be quashed due to lack of proof that he was properly advised of his "constitutional rights in the prior and present convictions regarding the right to remain silent."

15

At the habitual offender hearing, the Defendant objected to the introduction of records submitted by the State on the basis that a proper foundation for their admission had not been established. He subsequently objected to the introduction of the records stating, "I have a foundation objection for the purposes of identification."

After the State put on its witnesses, defense counsel made arguments on several issues. Regarding the court minutes, defense counsel argued that they did not reflect whether the Defendant was given notice of the existence of or consequences of the habitual offender statute. Defense counsel then mentioned the response he filed and made an argument regarding selective use of the habitual offender statute by the District Attorney's Office. Defense counsel then went on to assert the following:

> I'd like to argue that, of course, the burden of proof is beyond a reasonable doubt, even in these proceedings, and that without the State providing us a colloquy and establishing what the case law says is, quote, a perfect record of the knowledge of this defendant or any defendant of the consequences of his plea.
>
> And, also, the fact that . . . the independent proof required by the statute of identification, which is my second argument with regards to this gentleman's prints being taken this morning.

Lastly, defense counsel asserted that several of the offenses used by the State were more than ten years old and the record did not show the Defendant's last date of supervision for those offenses.

In *State v. Carlos*, 98-1366, pp. 6-7 (La. 7/7/99), 738 So.2d 556, 559 (footnotes omitted), the Louisiana Supreme Court discussed the burdens of proof in recidivism proceedings as follows:

> In *Shelton*, this Court recognized that *Boykin* does not require that the entire burden be placed on the prosecution in a recidivism proceeding. 621 So.2d at 779 (relying on *Parke*, 506 U.S. at 34, 113 S.Ct. at 525-26). Rather, the presumption of regularity that attaches to prior convictions encouraged us to revisit our previous system of placing the entire burden on the State to prove the validity of prior convictions. *Id*. Consequently, we held that when a defendant denies the allegations contained in the bill of information in an habitual offender proceeding,

16

the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. *Id*. If the State meets this initial burden, the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. *Id*. If the defendant carries this burden, then the burden reverts to the State to prove the constitutionality of the plea. *Id*. The State will meet this burden by producing a "perfect" transcript of the guilty plea colloquy. Anything less than a "perfect" transcript, such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's *Boykin* rights were prejudiced. In *Shelton*, we held that the State carried its initial burden under the revised burden-shifting rules by producing a well-executed guilty plea/waiver of rights form and a minute entry which stated, inter alia, that the judge "gave the Defendant his rights." *Id*. at 770, 780.

At the habitual offender hearing, the State presented court minutes showing the Defendant pled guilty to the predicate offenses and that he was represented by counsel at each plea. Once the State presented the court minutes proving the Defendant pled guilty to the prior offenses and was represented by counsel at those guilty pleas, the burden of proof shifted to the Defendant to prove an infringement of his rights or a procedural irregularity in the taking of the pleas. The Defendant presented no evidence at the hearing. The Defendant did object to the introduction of the court minutes, but not on the bases asserted in brief to this court. Thus, the arguments presented by the Defendant for the first time on appeal should not be considered by this court. Uniform Rules—Courts of Appeal, Rule 1-3. Accordingly, the State properly introduced the court minutes at the habitual offender hearing.

For the reasons asserted herein, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the State failed to present sufficient evidence to prove that he was the person who had been convicted of the prior offenses. The Defendant asserts the fingerprint cards introduced into

17

evidence in this case and used to identify him as the person who committed the prior offenses were insufficiently connected to the prior offenses.

In *State v. Newman*, 99-841, p. 15 (La.App. 5 Cir. 12/15/99), 750 So.2d 252, 260, the fifth circuit stated the following:

> To prove that a defendant is an habitual offender, the State must establish by competent evidence, that there is a prior felony conviction and that defendant is the same person who was convicted of the prior felony. *State v. Chaney*, 423 So.2d 1092, 1103 (La.1982); *State v. Williams*, 98-651 (La.App. 5th Cir. 2/10/99), 729 So.2d 14, 19. The State may establish the element of defendant's identity by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings or photographs contained in a duly authenticated record. *State v. Richmond*, 98-1015 (La.App. 5th Cir. 3/10/99), 734 So.2d 33, 37; *State v. Bailey*, (La.App. 5th Cir. 4/28/98), 713 So.2d 588, 610, *writ denied*, 98-1458 (La.10/30/98), 723 So.2d 971.

As noted by the Defendant, the State presented two witnesses at the habitual offender hearing. The first was a probation and parole officer who prepared a pre-sentence investigation report for the Defendant's conviction of simple burglary obtained on September 13, 2007, and the second was a detective who conducted a fingerprint analysis. The Defendant asserts that it is unclear exactly what documents the detective used for comparison of the fingerprints, as he testified that he did not use the fingerprints found on back of the bills of information or the fingerprint cards.

The Defendant further asserts that although the State asked Detective Chris Cogburn if he examined fingerprints from specific dates, he did not identify any of the evidence admitted at the hearing as the cards he used in connecting the Defendant to the predicate offenses. The Defendant notes the only fingerprint card the State had Detective Cogburn identify was the fingerprint card he took in open court at the habitual offender hearing. The Defendant further notes that at the habitual offender hearing the State asked the clerk for the documents previously admitted into evidence; however, he asserts the record is not clear as to whether Detective Cogburn

18

ever saw the documents, as he was not asked to identify the records he used for fingerprint comparison. The Defendant asserts that for this reason, the State failed to prove he was the same person who committed the prior offenses.

On the date of the habitual offender hearing, the State moved for and the trial court ordered that the Defendant be fingerprinted in open court. The State subsequently had fingerprint cards, bills of information, sentencing minutes, an affidavit and warrant for arrest, a police report, and a prisoner card admitted into evidence.

The following exchange occurred during the testimony of Detective Cogburn:

Q     Detective, do you know if you've been contacted about doing a fingerprint analysis for records for Mr. Tassin?

A     Yes, I was, on the 29th of April.

Q     And did you receive the certified copies of fingerprints?

A     Yes, I did.

Q     And were you able to examine those fingerprints?

A     Yes, I did.

MR. HANEY: If I could have the fingerprint records from the record, Madame Clerk.

(CLERK HAND RECORDS TO MR. HANEY.)

BY MR. HANEY:

Q     Now, were you able to examine records from an June 2, 2008/19/2001 [sic]?

A     Yes, sir.

Q     And were you able to examine fingerprints from an arrest on 1/17/1999?

A     Yes, sir.

Q     Were you able to examine the fingerprints from an arrest on 5/30/1994?

19

A     Yes, sir.

Q     And were you able to examine fingerprints from March 24, 2005?

A     Yes, sir.

Q     And were you able to examine fingerprints that were taken in open court this morning?

A     Yes, sir.  I rolled those fingerprints.

Q     And do you have an opinion as to these fingerprints as a whole as to the identity of the person in each of these print cards?

A     All of the fingerprint cards, in addition to the card that was rolled this morning, belonged to Mr. Tassin.

Detective Cogburn was then questioned on cross-examination as follows:

Q     Chris, your only comparative analysis from the documents was with the fingerprints that were taken this morning pursuant [to] a Court order; is that correct?

A     Yes, sir, I compared that with the other prints.

Q     You didn't have any other records, etcetera, other than what the Court ordered this morning?

A     No, sir.  I had certified copies of the fingerprints.

Q     Of the Bill of Information -- the backs of the Bill of Information and the fingerprint cards?

A     No, sir, these were fingerprint cards provided by the District Attorney's Office.

Q     I notice you have something with you up there.  Is that a report of any kind?

A     It's a copy of the report.

Q     From you?

A     My report that was made to Mr. Haney.

The report indicated that Detective Cogburn reviewed certified copies of ten fingerprint cards he received from Detective Robert Vincent and the prints matched those of the Defendant.

In the case at bar, the Defendant did object to introduction of evidence, which included the fingerprint cards and the bills of information, on the basis that there were no identifying factors linking him to any of the documents. The Defendant did not object to the State's failure to have Detective Cogburn identify the fingerprint cards admitted into evidence at the habitual offender hearing as those he examined when conducting the fingerprint comparison. Therefore, the Defendant waived review of that issue on appeal. La.Code Crim.P. art. 841.

The Defendant further argues that assuming the fingerprint cards introduced at the hearing were used for the comparison, the evidence was still insufficient to prove his identity as the person who committed the prior offenses. The Defendant asserts the fingerprint card found on page 32 of the record is linked to the bill of information in trial docket number 1-99-708 on page 33 only by the name, date of offense, and number. The Defendant contends that the crime listed on the fingerprint card is armed robbery, whereas the one listed on the bill of information is a mid-grade theft.

The Defendant asserts the fingerprint card on page 38 of the record is tenuously connected to the bill of information located on page 39 in that both list the same name, date of arrest, similar offense, and a number. The Defendant asserts there is a connection between the two offenses, but the connection is insufficient to prove beyond a reasonable doubt that the fingerprint card at issue corresponded with the conviction on the bill of information. The fingerprint card lists the offense as simple

21

burglary and the bill of information lists it as simple burglary of an inhabited dwelling.

The Defendant asserts there was no evidence introduced to bolster that evidence as was done in *State v. Bailey*, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, *writ denied*, 98-1458 (La. 10/30/98), 723 So.2d 971.

In *State v. Preston*, 98-180, p. 10 (La.App. 4 Cir. 11/10/99), 752 So.2d 211, 218, *writ denied*, 00-966, 00-1042 (La. 3/16/01), 786 So.2d 744, 745, the fourth circuit stated the following:

> At the multiple bill hearing, defense counsel focused on the issue of the fingerprint evidence and the lack of certification under La.C.Cr.P. art. 871. Thus, we conclude that defense counsel did preserve the identity issue for appellate review, as this is the basis for defendant's argument before this Court. Accordingly, the merits of this issue will be discussed.

Although the Defendant, in his "Response/Objection/Motion to Quash and Denial of Habitual Offender Bill of Information," asserted there was no independent proof that he was "one and the same with individuals who may have been convicted in the predicate offenses alleged," he did not specifically argue that the fingerprint cards at issue were not sufficiently linked to the bills of information or object to their admission at the habitual offender hearing on that basis. Therefore, the Defendant waived review of that issue on appeal. La.Code Crim.P. art. 841.

For the reasons asserted herein, the issues presented were waived by defense counsel's failure to make contemporaneous objections.

**ASSIGNMENT OF ERROR NUMBER THREE**

In his third assignment of error, the Defendant contends the State's arbitrary choice to seek the imposition of the enhanced penalties set forth in La.R.S. 15:529.1 against him amounted to prosecutorial misconduct.

22

The Defendant contends that in his "Response/Objection/Motion to Quash and Denial of Habitual Offender Bill of Information" he asserted that La.R.S. 15:529.1 was constitutionally defective in that it permitted selective prosecution based upon arbitrary and vague language contained within the statute. The Defendant asserts the State instituted habitual offender proceedings in retaliation for his exercising his right to trial.

> The defendant bears the burden of proving prosecutorial vindictiveness. *State v. Darensbourg*, 06-572 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128. In determining whether there has been prosecutorial vindictiveness, the court examines the state's actions in the context of the entire proceeding. *Id*. If, to a reasonable mind, the filing of the habitual offender bill can only be explained by a desire to deter or punish the defendant's exercise of legal rights, the events in the case will create a presumption of vindictiveness. *Id*.
>
> The district attorney has the discretionary power to charge a defendant under the habitual offender law just as he has the initial unlimited power to prosecute "whom, when, and how" he chooses. *State v. Dorthey*, 623 So.2d 1276, 1279 (La.1993); LSA-C.Cr.P. art. 61. The district attorney's use of the habitual offender laws "provides an ancillary sentencing factor designed to serve important and legitimate societal purposes." *State v. Orange*, 02-711 (La.App. 1 Cir. 4/11/03), 845 So.2d 570, 578, *writs denied*, 03-1352 (La.5/21/04), 874 So.2d 161, and 03-2195 (La.7/2/04), 877 So.2d 137. The use of the habitual offender law alone does not create a presumption of prosecutorial vindictiveness. *Id*.

*State v. Dauzart*, 07-15, p. 6 (La.App. 5 Cir. 5/15/07), 960 So.2d 1079, 1084-85.

The Defendant notes that at the habitual offender hearing, defense counsel stated the following:

> I came here as a contract lawyer simply to defend people on the habitual offender tract which has, apparently, been created.
>
> I think the creation of a special bad boy tract for purposes of sentencing and not have it be uniform across the board where everybody is prosecuted as a second offender equally creates a problem constitutionally. I wanted to bring that up and raise that issue today since this is, actually, the first habitual offender hearing we've ever had.

23

The Defendant contends that it is uncertain whether defense counsel was referring to the history of the recently created "bad boy tract" or to the court's history over all. The Defendant argues that in either case, the choice to seek enhancement against him when it has not been done to other habitual offenders leads to arbitrary results based upon the decision of a sole prosecutor. The State asserts the Defendant's claim regarding the comments by defense counsel is "absolutely ridiculous" and without merit.

The trial court did not rule on this claim at the habitual offender hearing or at the time of sentencing. However, the Defendant produced no evidence at the hearing or in brief to this court to suggest that the State filed the habitual offender bill of information for the purpose of deterring or punishing the exercise of his legal rights. Therefore, he failed to prove the State's pursuit of the habitual offender bill against him was vindictive. Accordingly, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER FOUR**

In his fourth assignment of error, the Defendant contends the trial court erred in not deviating below the statutorily mandated minimum sentence set forth in the habitual offender law.

The Defendant asserts that in his "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information" he asserted that La.R.S. 15:529.1 failed to take into consideration the culpability of the offender, the gravity of the offense, and the circumstances of the case. Accordingly, the trial court should have deviated below the statutory minimum sentence of twenty years in arriving at an appropriate sentence. The Defendant then asserts that the sentence imposed in the case at bar was nothing more than cruel and unusual punishment and served no useful purpose.

24

In *State v. Smith*, 07-468, p. 10 (La.App. 3 Cir. 10/31/07), 969 So.2d 694, 701, *writ denied*, 07-2484 (La. 5/16/08), 980 So.2d 707 (alteration in original), this court discussed departure from mandatory penalties as follows:

> [A] court may depart from mandatory penalties provided by the legislature for an offense upon a showing by the defendant that he is "exceptional, which in this context means that because of unusual circumstances [he] is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances." *State v. Johnson*, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677 (internal quotation marks and citation omitted); *see also State v. Dorthey*, 623 So.2d 1276, 1280-81 (La.1993) (holding that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment," or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime").

*State v. Lemons*, 06-1051, p. 1 (La.11/17/06), 942 So.2d 33, 33-34.

"A mandatory minimum sentence is presumed to be constitutional. *State v. Johnson*, 97-1906 (La.3/4/98), 709 So.2d 672." *State v. Rogers*, 07-427, p. 4 (La.App. 3 Cir. 10/31/07), 969 So.2d 707, 710. Furthermore, at the time he was sentenced, the Defendant in the case at bar failed to present any evidence that he was exceptional and deserved a downward departure from the mandatory minimum sentence pronounced by La.Code Crim.P. art. 15:529.1. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth assignment of error, the Defendant contends that in the event this court finds any of the issues were not specifically preserved, defense counsel acted ineffectively in not properly presenting the issues to the trial court and in not obtaining a specific ruling from the trial court. Further, the trial court erred in not

25

specifically ruling on the issues raised within the "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information."

The Defendant does not point to any specific issues in this assignment of error. We find any issues of ineffective assistance of counsel would be more properly raised in an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be held. Thus, any issues of ineffective assistance of counsel are relegated to post-conviction relief. *See State v. F.B.A.*, 07-1526, (La.App. 3 Cir. 5/28/08), 983 So.2d 1006.

In *State v. Dorsey*, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, the defendant filed a motion to quash the original habitual offender bill of information. Although the motion was set for hearing, there was no evidence in the record that the trial court ever held a hearing or ruled on the motion to quash. The fifth circuit concluded that no corrective action was required, as the motion was rendered moot by the State's subsequent filing of an amended habitual offender bill. The court further noted that by proceeding to the habitual offender hearing without objecting to the trial court's failure to rule, the defendant waived the motion. The court compared the case to *State v. Wise*, 05-221, p. 7 (La.App. 5 Cir. 10/6/05), 916 So.2d 290, 293, in which the fifth circuit held that "[i]f a defendant [did] not object to the trial court's failure to rule on a motion prior to trial, the motion [was] considered waived."

The Defendant's failure to have the trial court rule on the issues in his "Response/Objections/Motion to Quash, and Denial of Habitual Offender Bill of Information" prior to the habitual offender hearing or prior to sentencing rendered those issues moot.

For these reasons, this assignment of error lacks merit.

26

## CONCLUSION

The Defendant's sentence is affirmed.

**AFFIRMED.**